1  ROBBINS GELLER RUDMAN
   & DOWD LLP
2  DARREN J. ROBBINS (168593)
MICHAEL A. TRONCOSO (221180)
3  DANIELLE S. MYERS (259916)
MICHAEL ALBERT (301120)
4  655 West Broadway, Suite 1900
San Diego, CA 92101
5  Telephone: 619/231-1058
darrenr@rgrdlaw.com
6  mtroncoso@rgrdlaw.com
dmyers@rgrdlaw.com
7  malbert@rgrdlaw.com

8  Local Counsel for Proposed Lead Plaintiff

9  MOTLEY RICE LLC
GREGG S. LEVIN
10  CHRISTOPHER F. MORIARTY
28 Bridgeside Boulevard
11  Mount Pleasant, SC 29464
Telephone: 843/216-9000
12  glevin@motleyrice.com
cmoriarty@motleyrice.com
13
Proposed Lead Counsel for Proposed Lead Plaintiff
14
[Additional counsel appear on signature page.]
15
UNITED STATES DISTRICT COURT
16
NORTHERN DISTRICT OF CALIFORNIA
17
SAN JOSE DIVISION
18

19  CITY OF CORAL SPRINGS POLICE ) Case No. 5:25-cv- 06252- NW
OFFICERS' PENSION PLAN, on Behalf of )
20  Itself All Others Similarly Situated, ) CLASS ACTION
)
21                       Plaintiff, ) KBC ASSET MANAGEMENT NV'S
) OPPOSITION TO COMPETING LEAD
22     vs. ) PLAINTIFF MOTIONS
)
23  APPLE INC., et al., ) DATE: December 3, 2025
) TIME 9:00 a.m.
24                  Defendants. ) CTRM: 3, 5th Floor
) JUDGE: Hon. Noël Wise
25  _____ )

26

27

28

4911-5757-2708.v4

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   ARGUMENT ........................................................................................................2

    A.    NPS Cannot Trigger the Most Adequate Plaintiff Presumption............................2

        1.    NPS's Loss Figures Are Unreliable ................................................2

        2.    NPS Has Not Established It Is the Real-Party-in-Interest ...........................5

    B.    UIL Is Not the Most Adequate Plaintiff ................................................................8

        1.    UIL Loses the *Lax* Comparison ................................................................8

        2.    UIL Is Atypical ........................................................................................9

        3.    UIL Submitted a False Certification .......................................................11

        4.    UIL's Parent, UAMH, Is Playing a Shell Game to Mask Potential Class Period Profits........................................................................................12

    C.    KBC Is the Presumptive Lead Plaintiff ................................................................14

III.  CONCLUSION....................................................................................................15

**TABLE OF AUTHORITIES**

Page

**CASES**

*Averza v. Super Micro Comput., Inc.*,
   2025 WL 1771455 (N.D. Cal. June 26, 2025)......................................................11

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)..............................................................................................9, 10

*Bousso v. Spire Glob., Inc.*,
   2024 WL 4873311 (E.D. Va. Nov. 21, 2024).....................................................11

*Cambridge Ret. Sys. v. Mednax, Inc.*,
   2018 WL 8804814 (S.D. Fla. Dec. 6, 2018).....................................................4, 8

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)..................................................................................................4

*Friedman v. Quest Energy Partners LP*,
   261 F.R.D. 607 (W.D. Okla. 2009)......................................................................13

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014)................................................................................................10

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ................................................................................10

*Harris v. Amgen, Inc.*,
   770 F.3d 865 (9th Cir. 2014), *judgment rev'd on other grounds by*
   *Amgen, Inc. v. Harris*,
   577 U.S. 308 (2016).................................................................................................9

*Hayes v. Enphase Energy, Inc.*,
   2025 WL 986469 (N.D. Cal. Mar. 31, 2025).......................................................3

*In re Allergan PLC Sec. Litig.*,
   2020 WL 5796763 (S.D.N.Y. Sep. 29, 2020)....................................................14

*In re Apple Inc. Sec. Litig.*,
   2020 WL 2857397 (N.D. Cal. June 2, 2020)........................................................5

*In re Bard Assocs., Inc.*,
   2009 WL 4350780 (10th Cir. Dec. 2, 2009).....................................................6, 13

*In re Boeing Co. Aircraft Sec. Litig.*,
   2019 WL 6052399 (N.D. Ill. Nov. 15, 2019) .......................................................6

1

2                                                                                      **Page**

3    *In re Cavanaugh,*
4        306 F.3d 726 (9th Cir. 2002) ........................................................1, 2, 3

5    *In re Critical Path, Inc. Sec. Litig.,*
         156 F. Supp. 2d 1102 (N.D. Cal. 2001) ...........................................8
6
7    *In re Harcourt Brace Jovanovich, Inc. Sec. Litig.,*
         838 F. Supp. 109 (S.D.N.Y.1993)...................................................10

8    *In re Kraft Heinz Sec. Litig.,*
9        No. 1:19-cv-01339 (N.D. Ill. May 20, 2022) ...................................10

10   *In re Livent, Inc. Noteholders Sec. Litig.,*
         211 F.R.D. 219 (S.D.N.Y. 2002) .....................................................10
11
     *In re Mersho,*
12       6 F.4th 891 (9th Cir. 2021) ..............................................................2

13   *In re Snap Inc. Sec. Litig.,*
14       2019 WL 2223800 (C.D. Cal. Apr. 1, 2019) ................................6, 7

15   *In re Snap Inc. Sec. Litig.,*
         No. 2:17-cv-03679 (C.D. Cal. Feb. 22, 2019) .................................6
16
17   *In re Twitter, Inc. Sec. Litig.,*
         No. 4:16-cv-05314 (N.D. Cal.) .......................................................15

18   *In re Winstar Commc'ns Sec. Litig.,*
19       290 F.R.D. 437 (S.D.N.Y. 2013) ....................................................10

20   *Ind. Pub. Ret. Sys. v. Rivian Auto., Inc.,*
         2024 WL 5279156 (C.D. Cal. Oct. 24, 2024).........................7, 8, 14
21
22   *Ind. Pub. Ret. Sys. v. Rivian Auto., Inc.,*
         2025 WL 29449 (C.D. Cal. Jan. 2, 2025) .........................................7

23   *Karp v. Diebold Nixdorf, Inc.,*
24       2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) ...................................5

25   *Leventhal v. Chegg, Inc.,*
         2022 WL 4099454 (N.D. Cal. Sept. 7, 2022) ...................................8
26
27   *McGuinness v. Parnes,*
         1988 WL 66214 (D.D.C. June 17, 1988)..........................................10

28

Page

*Pio v. Gen. Motors Co.*,
   2014 WL 5421230 (E.D. Mich. Oct. 24, 2014) ......................................................................8

*Rocco v. Nam Tai Elecs., Inc.*,
   245 F.R.D. 131 (S.D.N.Y. 2007) ........................................................................................10

*Rodriguez v. DraftKings Inc.*,
   2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021) ....................................................................11

*Ruland v. InfoSonics Corp.*,
   2006 WL 3746716 (S.D. Cal. Oct. 23, 2006) .......................................................................3

*Scheller v. Nutanix, Inc.*,
   2021 WL 2410832 (N.D. Cal. June 10, 2021) ......................................................................1

*Shupe v. Rocket Cos., Inc.*,
   601 F. Supp. 3d 214 (E.D. Mich. 2022)............................................................................3, 9

*Smajlaj v. Brocade Commc'ns Sys. Inc.*,
   2006 WL 7348107 (N.D. Cal. Jan. 12, 2006) .......................................................................8

*Steamfitters Local 449 Pension Fund v. Cent. Eur. Distrib. Corp.*,
   2012 WL 3638629 (D.N.J. Aug. 22, 2012) ..........................................................................5

*Tsirekidze v. Syntax- Brillian Corp.*,
   2008 WL 942273 (D. Ariz. Apr. 7, 2008) ..........................................................................14

*Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*,
   2021 WL 533518 (S.D. Cal. Feb. 12, 2021)....................................................................4, 11

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
   §78u-4(a)(2)(A)(iv) ................................................................................................................4

Federal Rules of Civil Procedure
   Rule 17.....................................................................................................................................2
   Rule 17(a).................................................................................................................................6
   Rule 23.........................................................................................................................2, 4, 6, 14
   Rule 23(a)............................................................................................................................1, 2
   Rule 23(a)(3)..........................................................................................................................10
   Rule 44.1.............................................................................................................................5, 7

I.    **INTRODUCTION**

The Private Securities Litigation Reform Act of 1995 ("PSLRA") prescribes a straightforward process for appointing a lead plaintiff. First, the court "must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *In re Cavanaugh*, 306 F.3d 726, 729-31 (9th Cir. 2002). Second, the court must "focus its attention on ***that*** plaintiff and determine, based on the information [it] has provided in [its] pleadings and declarations, whether [it] satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id*. (emphasis in original)[1] If so, then that plaintiff "becomes the presumptively most adequate plaintiff." *Id*. at 730. "If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake . . . ." *Id*.

Here, KBC Asset Management NV ("KBC") possesses the largest financial interest among any eligible movant. Although the National Pension Service ("NPS"), purporting to act on behalf of the Republic of Korea National Pension Fund ("NPF"), and Union Investment Luxembourg S.A. ("UIL") each asserts it possesses a larger financial interest in the relief sought by the class, neither is eligible for the presumption, because:

- NPS's financial interest is not verifiable as its own papers confirm. NPS includes numerous intra-account transfers and round-trips that inflate the loss it claims on behalf of NPF (and unlike KBC) NPS failed to timely provide information sufficient for the Court to undertake its statutory mandate to calculate NPS's losses under the first-in, first-out ("FIFO") method. Further, NPS profited on its Apple Inc. Class Period transactions if the intra-Class Period partial disclosures are determined to be insufficient loss causation events. Finally, and perhaps most fundamentally, NPS moves "on behalf of" NPF without articulating the governing statute, charter, assignment, or trust instrument vesting NPS – not NPF – with the required financial stake and legal authority to serve as lead plaintiff.

- UIL's application is also defective. Though it claims a larger last-in, first-out ("LIFO") loss, UIL's financial interest is objectively smaller than KBC's on all *Lax-Olsten* factors but one. *See Scheller v. Nutanix, Inc*., 2021 WL 2410832, at *4 (N.D. Cal. June 10, 2021) ("'[i]n assessing which class member has the "largest financial interest" courts typically consider the *Lax-Olsten* factors, which include: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during

---

[1]    All emphasis is added and all citations and footnotes are omitted unless otherwise indicated.

the class period; and (4) the approximate losses suffered during the class period'"). Its claimed loss appears to reflect entity-selection gamesmanship: UIL's parent company (Union Asset Management Holding AG ("UAMH") deviated from its long-standing practice of moving on behalf of its subsidiaries as lead plaintiff to manufacture a loss for UIL while masking hugely profitable Apple trades by another UAMH subsidiary. UIL also disclaims the efficient-market theory central to this case. And its filings conflict – either the loss chart is false or the sworn certification omits material facts.

In short, both competing movants are hobbled by financial interest concerns and present threshold Rule 17/standing concerns precluding the required *prima facie* typicality and adequacy showing. As such, the presumption does not attach.

By contrast, KBC not only possesses the largest financial interest in the relief sought by the class, but has none of NPS's or UIL's disqualifying defects. Thus, KBC's motion should be granted.

## II.    ARGUMENT

"The 'most capable plaintiff' – and hence the lead plaintiff – is the one who has the greatest financial stake in the outcome of the case, *so long as* he meets the requirements of Rule 23." *Cavanaugh*, 306 F.3d at 729; *In re Mersho*, 6 F.4th 891, 898-99 (9th Cir. 2021). To identify the presumptively most adequate plaintiff, the Court "must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Cavanaugh*, 306 F.3d at 729-30; *Mersho*, 6 F.4th at 901 n.3. It "must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Cavanaugh*, 306 F.3d at 730, 732 (emphasis in original). The "district court has latitude as to what information it will consider in determining typicality and adequacy," and "[i]f the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Id.*

### A.    NPS Cannot Trigger the Most Adequate Plaintiff Presumption

#### 1.    NPS's Loss Figures Are Unreliable

NPS's claimed financial interest is a mirage. The financial interest NPS claims on behalf

1   of NPF is riddled with unexplained intra-account transfers (*e.g.*, "Transfer From PGDH,"

2   "Transfer To RETM," "Transfer From NP28/NP34"), pre-Class Period movements, and paired

3   trades showing explicit profits. This pattern of unexplained transfers and profitable in-and-out

4   trades grossly inflate NPS's claimed loss and mask its true financial interest in this case, all while

5   creating unaddressed vulnerabilities to *Dura*-style defenses. *See, e.g.*, *Tucker* ECF 26-3 at 2 of 26

6   (Account GDSN showing multiple "Transfer To" entries preceded by sales of nearly a million

7   shares with supposedly "$0.00" financial impact ascribed to NPS).

8        This evidentiary gap matters. While courts applying the PSLRA weigh various factors and

9   estimated losses often carry the most weight, a movant's claimed financial stake must be

10   transparent, testable, and verifiable "based on the information [the movant] has provided in his

11   pleadings and declarations." *Cavanaugh*, 306 F.3d at 730. Indeed, to conduct the

12   "straightforward" statutory inquiry mandated by the Ninth Circuit, a lead plaintiff movant must,

13   as a threshold matter, provide the Court with data to "calculate [a] potential lead plaintiff's

14   financial interest in the litigation." *Id.* at 729-30 & n.4. By failing to provide sufficient data to

15   allow the Court to disaggregate intra-account transfers and paired trades, NPS has made it

16   impossible for the Court to offset NPS's claimed loss with gains experienced by selling Apple

17   securities purchased before the Class Period and sold during the Class Period, as occurred with the

18   1.1 million Apple shares sold between October 2024 and April 2025 for proceeds of over $262

19   million in account GDSN that are ascribed "$0.00" value in NPS's loss chart. *Compare Tucker*

20   ECF 26-3 at 2 of 26 *with Hayes v. Enphase Energy, Inc.*, 2025 WL 986469, at *2 (N.D. Cal. Mar.

21   31, 2025) (holding that an "offset" is needed because a movant's "pre-class period purchases

22   occurred when there was no price inflation, and the sales were made during the class period during

23   the period of price inflation") (cleaned up). ***This omission is no careless mistake***. *See Ruland v.*

24   *InfoSonics Corp.*, 2006 WL 3746716, at *5 n.1 (S.D. Cal. Oct. 23, 2006) ("Had Sibley purchased

25   stock before the class period and sold it for a profit during the class period, such windfall gains

26   would be deducted from Sibley's losses."). NPS is not eligible to be appointed lead plaintiff

27   "[g]iven th[e] absence of information" necessary to "determine the reliability" of NPS's "losses-

28   suffered calculation." *See Shupe v. Rocket Cos., Inc.*, 601 F. Supp. 3d 214, 219-20 (E.D. Mich.

1    2022) (declining to appoint movant who did not supply data needed to test loss metrics);

2    *Cambridge Ret. Sys. v. Mednax, Inc.*, 2018 WL 8804814, at *6 (S.D. Fla. Dec. 6, 2018) (same)

3    (Observing "[t]he Court's review was rendered needlessly complicated by these entities' failure to

4    use consistent reporting methods and their failure to disclose all relevant information. . . . It wastes

5    the Court's time when proposed lead plaintiffs . . . simply note that shares held prior to the Class

6    Period were sold, without disclosing the net gain on the sale of those shares or, at minimum,

7    carefully accounting for each of those shares.").

8          NPS's trading also subjects it to unique loss causation challenges as NPS's own records

9    reveal a flurry of speculative, short-swing trading and a dizzying number of intra-fund transfers.

10    Critically, NPS's loss calculation improperly treats these internal transfers – the functional

11    equivalent of moving money from one's left pocket to one's right – as new "purchases," a

12    maneuver that grossly inflates its claimed financial interest.[2] This atypical "purchasing" pattern,

13    combined with millions of shares sold at inflated prices during the statutory 90-day lookback

14    period, subjects NPS to intractable, plaintiff-specific challenges to loss causation and a unique fact

15    inquiry as to whether NPS truly suffered any damages, fatally undermining its ability to adequately

16    represent the class. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-47 (2005).[3] These issues

17    are neither abstract nor speculative – NPS's own exhibits evidence profit-generating sales around

18    interim dates and heavy pre- and mid-Class Period position reductions. *See Tucker* ECF 26-3. In

19

20    [2]   That NPS would present such a distorted loss calculation also undermines its fitness as a
fiduciary; does it intend to compensate itself in this fashion (*i.e.*, by treating its inter-account

21    transfers as purchases) in a future plan of allocation?

22    [3]   Equally important, NPS's Certification fails to comply with the PSLRA's plain disclosure
mandate, which requires a plaintiff to file a sworn statement setting forth "***all of the transactions***

23    of the plaintiff in the security that is the subject of the complaint." 15 U.S.C. §78u-4(a)(2)(A)(iv).
NPS, however, narrowly certified only its "***purchase and sale transactions***," an unexplained

24    departure from its own practice of certifying all transactions required by the statute. This omission
is material because numerous transaction types – such as transfers, short positions, covers,

25    distributions, or other acquisitions and dispositions – which NPS may not define as "purchases"
or "sales," can significantly impact (and even completely eliminate) its financial interest and/or

26    Rule 23 showing. Given the dozens of unexplained "transfers" already visible in its disclosures,
NPS's failure to unequivocally certify that it has produced a complete transactional history is

27    disqualifying. *See Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*, 2021 WL 533518, at *4
(S.D. Cal. Feb. 12, 2021) (disqualifying movant who was unable to "to affirm their transactions

28    without any equivocation").

1    fact, if the Court concludes at any stage of this litigation that only the final end-of-Class Period

2    disclosure event on June 9, 2025 sufficiently alleges loss causation, NPS will have suffered ***no***

3    ***loss at all***, but rather experienced a $36 million ***profit*** on its Apple shares!  *See Karp v. Diebold*

4    *Nixdorf, Inc.*, 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) ("[T]he exaggerated loss totals

5    originally submitted by the Aroras represented no slight error; it was an error of some 34%.  The

6    error struck at the core of the PSLRA's lead plaintiff inquiry: determining which movant holds the

7    largest financial stake in the litigation. . . .  [T]hese issues indicate to the Court a 'certain

8    carelessness about detail that undermines the adequacy' of the Aroras as a lead plaintiff in a

9    complex securities class action.").[4]

10              **2.**       **NPS Has Not Established It Is the Real-Party-in-Interest**

11          Courts recognize that there is "no greater impediment to a [p]laintiff's ability to prosecute

12    a case than a lack of standing."  *Steamfitters Local 449 Pension Fund v. Cent. Eur. Distrib. Corp.*,

13    2012 WL 3638629, at *10 (D.N.J. Aug. 22, 2012).  Here, NPS styles its motion as being brought

14    "on behalf of" the National Pension Fund ("NPF") but cites no statutory or documentary basis

15    under Korean law – no charter, trust instrument, or assignment – vesting NPS with authority to

16    prosecute NPF's transactions.  Nor did NPS timely discharge its affirmative duty under Federal

17    Rule of Civil Procedure 44.1 to provide this foreign-law authority it relies on *sub silentio*.

18          The Republic of Korea's National Pension Act underscores the problem.  The Act

19    distinguishes the entities: Article 101 defines the NPF as a "liability reserve," *i.e.*, a pool of

20    financial assets lacking legal personality and capacity to sue; Article 24 separately establishes NPS

21    as a "juridical person" with the legal capacity to sue and be sued.  *See* National Pension Act 2011

22    (Act No. 6124) (S. Kor.), *available at* https://natlex.ilo.org/dyn/natlex2/r/natlex/fe/details?p3_isn=

23

24

---

25    [4]   It is not rare that class periods are altered at the motion to dismiss stage, resulting in the

26    replacement of the lead plaintiff due to meaningfully altered financial interests.  *See, e.g.*, *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *28 (N.D. Cal. June 2, 2020) (granting motion to

27    dismiss allegations asserted over longer class period, upholding allegations during one quarter class period, and announcing intent to transition leadership to another institutional investor for

28    surviving allegations).

1  61972.  Because NPF has no legal personality, any action over NPF's transactions must be

2  prosecuted by a party that is legally empowered – by statute or instrument – to assert NPF's claims.

3      The problem for NPS is that Federal Rule of Civil Procedure 17(a) requires an action be

4  brought by the real party in interest.  Here, NPF allegedly suffered the loss but cannot sue; NPS

5  can sue *in its own name* but did not suffer the loss.  Nor has it timely shown it holds or was

6  assigned NPF's claims.  NPS's Certification merely asserts "full power and authority to bring suit,"

7  (*Tucker* ECF 26-2 at ¶4), which is conclusory (and suggests the existence of a mere power-of-

8  attorney) absent statutory or documentary authority.  Having failed to submit that authority by the

9  lead-plaintiff deadline, NPS cannot cure the defect now.  *See In re Bard Assocs., Inc.*, 2009 WL

10  4350780, at *3 (10th Cir. Dec. 2, 2009) (finding no abuse of discretion in district court's holding

11  that movant must demonstrate standing "by the time the lead-plaintiff motions are due"); *In re*

12  *Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at *7 n.10 (N.D. Ill. Nov. 15, 2019) ("[A]

13  viable candidate for Lead Plaintiff would understand the need to make a more fulsome preliminary

14  showing of adequacy from the outset of the lead plaintiff selection process.").

15      A putative lead plaintiff's opaque structure invites unique, class-endangering defenses.  For

16  example, in *In re Snap Inc. Sec. Litig.*, 2019 WL 2223800 (C.D. Cal. Apr. 1, 2019), the court

17  disqualified the New Mexico State Investment Council ("NMSIC") – a domestic entity that was a

18  frequent and successful lead plaintiff – finding that the "apparently complex interplay" between

19  NMSIC and other state bodies remained "opaque," exposing the class to unique defenses regarding

20  NMSIC's standing and authority to bring suit.  *Id.*  at *3.  Tellingly, it was NPS's lead counsel

21  here who successfully argued in the *Snap* case that NMSIC's failure to clarify these structural

22  complexities under New Mexico law rendered NMSIC unable to satisfy the Rule 23 showing

23  requirement of a lead plaintiff.  *In re Snap Inc. Sec. Litig.*, No. 2:17-cv-03679, ECF 249 at 1-4

24  (C.D. Cal. Feb. 22, 2019); *see also id.*, ECF 263, Transcript of Proceedings at 18:10-17 (C.D. Cal.

25  Mar. 4, 2019) ("It's not clear that counsel's interpretation of New Mexico state law is appropriate,

26  and it's possible the defense would challenge that and say New Mexico state did not have authority

27  to move on behalf of New Mexico SIC, the state investment officer did not have the authority to

28

1    bind the state in civil litigation.  And I think those are all issues which create a unique issue with

2    respect to New Mexico that no one else faces here.”).

3         The risks posed by NPS here are exponentially greater than those deemed disqualifying in

4    *Snap*.  NMSIC is a domestic institution whose authority was governed by decipherable state law;

5    by contrast, NPS is a non-U.S. entity whose standing has never been tested in a U.S. court (unlike

6    KBC) and whose empowering laws, regulations, and governing statute are all unsubstantiated.  In

7    fact, the only other time NPS sought to serve as lead plaintiff, in the *Rivian* litigation, the court

8    rebuked its motion, finding the declaration provided by NPS and its co-movants amounted to mere

9    “conclusory and boilerplate assurances” and that the group failed to provide “specific, substantive

10   information” on how NPS would function as a fiduciary.  *See Ind. Pub. Ret. Sys. v. Rivian Auto.,*

11   *Inc*., 2024 WL 5279156, at *2 (C.D. Cal. Oct. 24, 2024); *Ind. Pub. Ret. Sys. v. Rivian Auto., Inc*.,

12   2025 WL 29449, at *2 (C.D. Cal. Jan. 2, 2025).  The same remains true today.  By contrast, courts

13   routinely appoint KBC as a lead plaintiff and class representative.  *See Tucker* ECF 38 at 7.

14        NPS’s shortcomings are worsened by its failure to adhere to the PSLRA’s procedural

15   requirements.  While the *Snap* court expressed concerns about ambiguities in the interpretation of

16   domestic law, NPS asks this Court to blindly accept its own invocation of authority under

17   unidentified Korean law.  In doing so, NPS has not fulfilled its burden under Federal Rule of Civil

18   Procedure 44.1, which requires a party relying on foreign law provide the Court with the materials

19   needed to make the appropriate determination.  Thus, while NPS’s Certification boldly claims that

20   the Court should entrust the interests of thousands of class members to NPS because it asserts it

21   has “full power and authority to bring suit,” (*Tucker* ECF 26-2 at ¶4), NPS’s lack of supporting

22   statutory, documentary, or evidentiary authority is a significantly greater omission than when its

23   own counsel previously used this foundational requirement to disqualify a candidate deemed to be

24   far less risky.[5]

25

26   _____

     [5]    By contrast, despite KBC’s standing being a matter of settled law, KBC still timely provided
27   the Court with assignments and management agreements.  *Compare Tucker* ECF 38-5
     (assignments from KBC’s funds to KBC); *Tucker* ECF 38-6–38-7 at 2.2.2 (management
28   agreements stating funds authorize KBC to “participat[e] in **class actions**” on their behalf)

1    Appointing NPS as the lead plaintiff "on behalf of" NPF would force early motion practice

2    over capacity, real-party-in-interest, and chain-of-title – a sideshow certainly not in the class's best

3    interests.[6]  The lead plaintiff requirements embodied in the PSLRA were specifically designed to

4    prevent absent class members from being saddled with such risks, particularly when another,

5    suitable institutional investor is available (KBC).

6    **B.    UIL Is Not the Most Adequate Plaintiff**

7    **1.    UIL Loses the *Lax* Comparison**

8    Although "[s]ome courts indeed have concluded that the amount of alleged loss should be

9    given the greatest weight when selecting a lead plaintiff, . . . such pronouncements are often made

10   in cases in which the competing movants are not competitive as to the other three accepted factors."

11   *Cambridge Ret. Sys.*, 2018 WL 8804814, at *8.  Indeed, judges of this Court and in other Districts

12   have found the second factor – retained shares – to be the most determinative factor in

13   approximating an investor's potential recovery.  *See, e.g.*, *In re Critical Path, Inc. Sec. Litig.*, 156

14   F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) (finding that the net shares purchased were

15   "determinative" of financial interest); *Pio v. Gen. Motors Co.*, 2014 WL 5421230, at *4 (E.D.

16   Mich. Oct. 24, 2014) ("[T]he first three factors provide the most objective measurement of a

17

18

19   (emphasis in original); *Leventhal v. Chegg, Inc.*, 2022 WL 4099454, at *3 (N.D. Cal. Sept. 7, 2022)

20   (finding identical documentation sufficient under Belgian law).

21   [6]   NPS's structural opacity is further compounded by NPS's failure to explain the nature of the 36 subdivisions (*e.g.*, GDMS, GDYQ, NP22, NP26) on whose behalf it purports to be acting.  NPS

22   does not state whether these are separately-managed accounts, distinct legal personalities, or something different altogether.  This lack of clarity is particularly concerning given NPS's motion

23   in the *Rivian* case where it moved on behalf of six sub-components simply designated as "Account 1," "Account 2," *etc*.  NPS fails to articulate why NPF's structure is presented differently here and

24   whether NPS is strategically obscuring and anonymizing NPF's composition to avoid judicial review.  Opacity and inconsistency in how a movant presents its own structure is grounds for

25   finding it an inadequate representative when "there are too many questions surrounding [the movant's] standing, authority, transparency, and structure that may give rise to unique defenses

26   and are atypical of the class as a whole."  *See Smajlaj v. Brocade Commc'ns Sys. Inc*., 2006 WL 7348107, at *2-*3 (N.D. Cal. Jan. 12, 2006) ("Because it is unclear which funds held Brocade

27   stock, whether Intrepid Capital Management has authority to act on behalf of those funds, and whether any other Intrepid management companies would need to authorize this suit and the

28   production of any documents, Intrepid is likely to face unique defenses.").

1   movant's stake in the litigation because [losses suffered] is heavily dependent on the method

2   applied and numbers chosen to calculate losses.").

3       Here, while UIL claims to have suffered a larger LIFO loss than KBC, KBC's funds

4   purchased substantially more shares and net shares and expended more net funds:[7]

| Entity | Shares Purchased | Net Shares Purchased | Net Funds Expended |
|---|---|---|---|
| **KBC** | **3,016,349** | **491,294** | **$114,040,526** |
| UIL | 1,692,933 | 261,561 | $77,919,803 |

8       Because KBC's stake in the litigation is demonstrably larger on the three objective *Lax*

9   factors, KBC, not UIL, possesses the largest financial interest.  *See Shupe*, 601 F. Supp. 3d at 220

10  (concluding movant with the "largest net shares purchased" possessed the largest financial

11  interest).  UIL's slight, methodology-dependent edge in one metric cannot overcome KBC's clear

12  superiority across the others.

13                  **2.      UIL Is Atypical**

14      In securities fraud class actions like this, investors routinely rely on a rebuttable

15  presumption of reliance known as the "fraud-on-the-market" theory, which presupposes an

16  efficient market – one in which "the market price of shares traded on well-developed markets

17  reflects all publicly available information, and, hence, any material misrepresentations."  *Basic*

18  *Inc. v. Levinson*, 485 U.S. 224, 246 (1988).  Because the market "transmits information to the

19  investor in the processed form of a market price," investors are entitled to rely on public

20  misstatements whenever he "buys or sells stock at the price set by the market."  *Id.* at 244, 247.

21  Accordingly,"[t]he efficient market hypothesis [is] ordinarily applied in stock fraud cases."  *Harris*

22  *v. Amgen, Inc.*, 770 F.3d 865, 878 (9th Cir. 2014), *judgment rev'd on other grounds by Amgen,*

23  *Inc. v. Harris*, 577 U.S. 308 (2016).

24      Like the overwhelming majority of securities fraud actions, the complaint here explicitly

25  relies on the efficient market theory.  *See* ECF 1 at ¶62 ("At all relevant times, the market for

26

---

27  [7]    UIL's loss chart includes Quoniam Funds Selection SICAV – Equities Climate Transition (loss

28  ~$17,297), yet Quoniam does not appear on UIL's Certification – creating a threshold certification
    mismatch.  *Compare Tucker* ECF 29-2 *with Tucker* ECF 29-3.

1    Apple common stock was an efficient market . . . .").  As the U.S. Supreme Court has explained,

2    however, a defendant is entitled to "rebut the presumption of reliance with respect to an individual

3    plaintiff by showing that he did not rely on the integrity of the market price in trading stock."

4    *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014).  Here, that effort will be

5    made easier as UIL's umbrella organization (Union Investment Group) represents that "[o]ur

6    investment philosophy is based on our belief that ***markets are inefficient***."  About Us, Union

7    Investment,  https://<u>www.union-investment.com/about-us</u> (last visited Aug. 30, 2025).    This

8    admission renders UIL atypical of the class and disqualified to lead a U.S. class action which

9    fundamentally relies on the fraud-on-the-market theory of recovery.  *See, e.g., In re Winstar*

10   *Commc'ns Sec. Litig.*, 290 F.R.D. 437, 444 (S.D.N.Y. 2013) ("If Defendant can demonstrate that

11   BIM purchased Winstar securities 'without relying on the integrity of the market,' then Defendant

12   can rebut the presumption of reliance, and BIM's claims would be atypical.") (citing *Basic*, 485

13   U.S. at 249).[8]  A lead plaintiff motion should not be granted where "'there is a danger that absent

14   class members will suffer if their representative is preoccupied with defenses unique to it.'"  *See*

15   *generally Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

16          These issues with the Union Investment Group's atypical "markets are inefficient"

17   investment philosophy are by no means hypothetical.  *See* Exhibit 1 to the Declaration of Darren

18   J. Robbins in Support of KBC's Opposition to Competing Lead Plaintiff Motions ("Robbins Opp.

19   Decl.," *In re Kraft Heinz Sec. Litig.*, No. 1:19-cv-01339, ECF 359 at 21-22 (N.D. Ill. May 20,

20   2022).  UAMH – represented by both UIL and NPS's proposed lead counsel firms here, *see* n.16,

21   *infra*) – ultimately agreed to a settlement with defendants before the court could rule on the issue.

22

---

23   [8]    *See also In re Livent, Inc. Noteholders Sec. Litig.*, 211 F.R.D. 219, 222 (S.D.N.Y. 2002)
     (holding that the "'fraud on the market' theory presupposes an efficient market" and "the absence
24   of the presumption of reliance arising out of this theory may lead to atypical and individual issues
     of fact regarding reliance"); *Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007)
25   ("it has been recognized that a 'named plaintiff who is subject to an arguable defense of non-
     reliance on the market has been held subject to a unique defense, and therefore, atypical of the
26   class under Rule 23(a)(3).'") (citing *In re Harcourt Brace Jovanovich, Inc. Sec. Litig.*, 838 F. Supp.
     109, 113 (S.D.N.Y.1993)); *McGuinness v. Parnes*, 1988 WL 66214, at *3-*4 (D.D.C. June 17,
27   1988) (class certification denied in securities fraud suit where plaintiff, a "sophisticated
     contrarian," "did not believe that the market price reflected the market value of the stock").

28

### 3.    UIL Submitted a False Certification

Not only has UIL failed to make the *prima facie* typicality showing, it cannot make the adequacy showing either.  UIL certified, under penalty of perjury, that its "Funds' transactions in the Apple Inc. securities that are the subject of this action are set forth in the attached Schedule A."  ECF 29-2, ¶5.  Not so.  UIL's motion and loss chart seek to recover losses for Quoniam Funds Selection, SICAV – Equities Climate Transition, a fund not included in UIL's certification.  Even if that omission was inadvertent, "courts have disqualified lead plaintiff candidates for making incorrect representations due to honest mistakes, even without evidence that those candidates intended to mislead. . . .  That is because 'errors in [a lead plaintiff candidate]'s sworn statements amount to a substantial degree of carelessness and raise doubt' as to whether a court can trust that candidate's representations."  *Averza v. Super Micro Comput., Inc.*, 2025 WL 1771455, at *10 (N.D. Cal. June 26, 2025)(alterations in original); *see also Wasa Med. Holdings*, 2021 WL 533518, at *4 ("Whether the error was indeed inadvertent, this omission and lack of attention to detail calls into question the ability of [movant] to adequately serve as Lead Plaintiff in a class action.").

*Rodriguez v. DraftKings Inc.*, 2021 WL 5282006, at *9 (S.D.N.Y. Nov. 12, 2021) is instructive.  There, "three days after [other movants] filed their objections highlighting the problems" with the presumptive lead plaintiff's (Kaintz) certification, Kaintz "submitted his 'corrected' PSLRA certification fixing errors in the initial certification" and "an uninvited reply memorandum and affidavit from the accountant who prepared his loss chart, describing what went wrong."  *Id.* at *9.  While Kaintz sought "to minimize the issue as a 'clerical error made when transcribing' certain trades from the loss chart to the PSLRA certification" and claimed "that he 'missed these errors due to the volume of transactions involved,' which he fixed '[a]fter being alerted to the error,'" the court rejected such assertions, holding it was "not buying" the corrected certification and noting that "[h]ad Kaintz been serious about his responsibilities as a budding class representative, he should not have had to have been alerted to these basic errors in the first place.  Minor or not . . . the errors 'nonetheless speak[ ] to a level of carelessness' that rightly calls into doubt Kaintz's adequacy to be lead plaintiff."  *Id.* (alterations in original); *see also Bousso v. Spire Glob., Inc.*, 2024 WL 4873311, at *5 (E.D. Va. Nov. 21, 2024) (declining to appoint lead plaintiff

even though accepting that "the incorrect loss calculation was an innocent error rather than a deliberate effort to mislead the Court" because "that error raises serious concerns about Tagawa and his counsel's ability to adequately litigate this case").

### 4. UIL's Parent, UAMH, Is Playing a Shell Game to Mask Potential Class Period Profits

UIL's parent company, UAMH, has filed at least 28 prior lead plaintiff motions in securities cases, always as the parent entity with assignments from its subsidiaries (including UIL). Yet, here, UIL filed the motion itself.  Why?

A review of UAMH's institutional filings shines light on a possible motive for this unusual maneuver:  another UAMH subsidiary, Union Investment Privatfonds GmbH, generated substantial profits (likely in excess of $100 million) from trading Apple stock during the Class Period.  Indeed, the Form 13F reports (which institutional investors are required to file with the SEC) reveal that Union Investment Privatfonds purchased over 7 million Apple shares between March 31, 2024 and June 30, 2024 at approximately $200 per share – well below both the approximate price at which it sold roughly 3 million shares ($225-$250) and retained share price in this action of $210 (ECF 29-3):



1    It thus appears that UAMH opted not to move as it has done two dozen times previously to

2    generate the appearance of a loss by relying on the Class Period trades in Apple shares by UIL

3    alone. Such maneuvering is not mere speculation. In a recent case, defendants accused UAMH

4    of engaging in this type of entity-selection shell game by strategically choosing which of its funds

5    to include in the litigation while shielding others from discovery. *See* Robbins Opp. Decl., Ex. 1.

6    Notably, UAMH – represented by both UIL *and* NPS's counsel here, *see* n.10, *infra*) – ultimately

7    agreed to a settlement with defendants in that case *before* the court could resolve the issue.

8    Equally concerning as the decision to maneuver the application to generate the appearance

9    of a loss by UIL, it appears that UAMH intends to exercise control over the litigation. *See* ECF

10    29 at 9 (UIL's lead plaintiff brief conceding that: "***Since Union is a subsidiary of Union Asset***

11    ***Management, these experienced professionals would actively oversee the prosecution of the***

12    ***action if Union were appointed Lead Plaintiff***."); *see also* ECF 36 (UIL confirming UAMH as

13    UIL's parent and interested party in the outcome of the case). According to its own words, by

14    appointing UIL, the Court would be installing an entity (UAMH) to "actively oversee the

15    prosecution of the action" that potentially has a nine-figure ***profit*** on Apple transactions during the

16    Class Period.

17    The Court should not reward entity-selection gamesmanship that seeks to install a different

18    entity (UAMH) as the *de facto* lead plaintiff. Indeed, if UAMH intends to "actively oversee the

19    prosecution of the action," UAMH was required to obtain assignments to UAMH (as it has

20    previously routinely done) so that UAMH could prosecute the action on UIL's – and its other

21    subsidiaries that transacted in Apple stock during the Class Period – and the class' behalf. Any

22    subsequent attempt to do so now would be invalid. *See Bard Assocs.*, 2009 WL 4350780, at *3

23    (indicating that assignments must be obtained before the expiration of the PSLRA lead plaintiff

24    motion deadline); *Friedman v. Quest Energy Partners LP*, 261 F.R.D. 607, 612 (W.D. Okla. 2009)

25

26

27

28

("assignments of claims which occurred after the filing of the motion to be appointed lead plaintiff cannot be considered").[9]

## C.    KBC Is the Presumptive Lead Plaintiff

KBC presents none of the unique-defense challenges that will, at a minimum, be exploited by defendants and distract from class issues.  KBC has no intra-entity transfers to untangle, no certification mismatches, no questions about the real-party-in-interest or obscured financial interests:

| Issue | NPS | Union | KBC |
|---|---|---|---|
| Loss integrity & standing (transfers/round-trips; standing/authority) | ✗ | ✗ | ✓ |
| Efficiency & class representation (uncertified fund/trades; multi-fund complexity) | ✗ | ✗ | ✓ |

KBC's funds not only suffered substantial, **multi-million dollar losses**, but KBC also satisfies the Rule 23 requirements.  "[O]ther than pointing out its relatively low[er] financial stake in the litigation," other movants cannot make any legitimate argument against KBC's appointment.  *Tsirekidze v. Syntax- Brillian Corp.*, 2008 WL 942273, at *5 (D. Ariz. Apr. 7, 2008) (appointing pension fund as lead plaintiff despite that it did not claim the greatest financial loss because it "is the first [movant] to meet [the PSLRA's] standards").  Because KBC is the only movant that meets all statutory requirements that govern the Court's choice of the presumptive lead plaintiff, KBC's motion should be granted.

---

[9]    The Court may also wish to question whether UIL and NPS are each prepared to litigate this case alone.  The parallel filings of these institutions, coming immediately after the *Rivian* court's rejection of NPS's bid to serve jointly as lead plaintiff, raise the possibility of a coordinated effort to secure leadership roles for both remaining movants (or their counsel).  If UIL fails to raise the obvious deficiencies in NPS's motion, it could suggest a "secret workaround" between the parties – placing counsel's interests above the class.  *See In re Allergan PLC Sec. Litig.*, 2020 WL 5796763, at *7 (S.D.N.Y. Sep. 29, 2020).  KBC has no such undisclosed agreements.

III.    CONCLUSION

KBC does not bring these challenges lightly.  Indeed, KBC does not routinely challenge the motions of movants who claim larger losses and who are not impacted by actual or potential disqualifying issues.  Here, however, NPS and UIL have not shown they are the "most adequate" plaintiff.  NPS's loss depends on treating internal transfers as purchases and a flurry of intra-fund profitable in-and-out trading; UIL's candidacy depends on a smaller financial interest than KBC, the inclusion of a fund that was excluded from the certification, and the obfuscation of the parent's real financial interest and intent to control this litigation.

By contrast, KBC offers straightforward trading history and financial stake as well as documented authority to litigate.  KBC also has successfully recovered more than $1 billion for defrauded investors in this District and elsewhere, including in *In re Twitter, Inc. Sec. Litig.*, No. 4:16-cv-05314 (N.D. Cal.), where KBC recovered $809.5 million for class members.  The Court should appoint KBC as Lead Plaintiff and approve its selected counsel.

DATED:  September 2, 2025                    Respectfully submitted,

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            DARREN J. ROBBINS
                                            MICHAEL A. TRONCOSO
                                            DANIELLE S. MYERS
                                            MICHAEL ALBERT


                                            _____
                                                    s/ Darren  J. Robbins
                                            DARREN J. ROBBINS

                                            655 West Broadway, Suite 1900
                                            San Diego, CA  92101
                                            Telephone:  619/231-1058
                                            darrenr@rgrdlaw.com
                                            mtroncoso@rgrdlaw.com
                                            dmyers@rgrdlaw.com
                                            malbert@rgrdlaw.com

1

2  ROBBINS GELLER RUDMAN
    & DOWD LLP
3  SHAWN A. WILLIAMS (213113)
   Post Montgomery Center
   One Montgomery Street, Suite 1800
4  San Francisco, CA 94104
   Telephone: 415/288-4545
5  shawnw@rgrdlaw.com

6  Local Counsel for Proposed Lead Plaintiff

7  MOTLEY RICE LLC
   GREGG S. LEVIN
8  CHRISTOPHER F. MORIARTY
   28 Bridgeside Boulevard
9  Mount Pleasant, SC 29464
   Telephone: 843/216-9000
10 glevin@motleyrice.com
   cmoriarty@motleyrice.com
11
   Proposed Lead Counsel for Proposed Lead
12 Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28