# EXHIBIT P

**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver
lweaver@bfalaw.com
1901 Harrison Street, Suite 1100
Oakland, CA 94612
Telephone: (510) 844-7759
Facsimile: (510) 844-7701

**MOTLEY RICE LLC**
James M. Hughes
jhughes@motleyrice.com
Gregg S. Levin
glevin@motleyrice.com
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450

*Counsel for KBC Asset Management NV and*
*[Proposed] Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| DORIS SHENWICK, as Trustee for the DORIS SHENWICK TRUST, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TWITTER, INC., RICHARD COSTOLO and ANTHONY NOTO,<br><br>Defendants. | Case No. 3:16-cv-05314-JST<br><br>**NOTICE OF MOTION AND MOTION OF KBC ASSET MANAGEMENT NV FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD AND LIAISON COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEREOF**<br><br>CLASS ACTION<br><br>DATE: Thursday, December 22, 2016<br>TIME: 2:00pm<br>DEPT.: Courtroom 9, 19th Floor<br>JUDGE: Hon. Jon S. Tigar |

[*caption continued on next page*]

KBC MOT. FOR CONSOLIDATION, APPOINTMENT AS LEAD PL. AND
APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL
CASE NO. 3:16-CV-05314-JST; 3:16-CV-05439-JST

CLAIRE DEGENHARDT, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

TWITTER, INC., RICHARD COSTOLO and ANTHONY NOTO,

Defendants.

)
)
)
)
)
)
)
)
)
)
)

Case No. 3:16-cv-05439-JST

KBC Mot. for Consolidation, Appointment as Lead Pl. and
Approval of Selection of Lead and Liaison Counsel
Case No. 3:16-CV-05314-JST; 3:16-CV-05439-JST

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................ii

NOTICE OF MOTION AND MOTION ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................2

STATEMENT OF THE ISSUES...............................................................................................2

FACTUAL BACKGROUND .....................................................................................................3

ARGUMENT ..............................................................................................................................6

A.     The Related Actions Should Be Consolidated…………………………………….............6

B.     KBC Should Be Appointed Lead Plaintiff...................................................................7

       1.     KBC Has Satisfied The PSLRA's Procedural Requirements ..............................8

       2.     KBC Has The Largest Financial Interest In The Relief Sought By The
              Class ....................................................................................................................9

       3.     KBC Satisfies Rule 23's Typicality And Adequacy Requirements.......................9

              a.     KBC's Claims Are Typical Of Those Of The Class................................10

              b.     KBC Will Fairly And Adequately Protect The Interests Of The
                     Class.......................................................................................................11

C.     The Court Should Approve KBC's Selection Of Lead Counsel......................................12

CONCLUSION.......................................................................................................................144

KBC Mot. for Consolidation, Appointment as Lead Pl. and
Approval of Selection of Lead and Liaison Counsel
Case No. 3:16-CV-05314-JST; 3:16-CV-05439-JST

i

# TABLE OF AUTHORITIES

**CASES**

*Aronson v. McKesson HBOC, Inc.*,
   79 F. Supp. 2d 1146 (N.D. Cal. 1999).............................................................................. 6, 9, 13

*Aruliah v. Impax Labs., Inc.*,
   No. 3:14-cv-03673-JD (N.D. Cal. Nov. 19, 2014) ................................................................ 13

*City of Ann Arbor Employees' Retirement System v. Accuray Inc.*,
   No. C 09-03362 CW, 2009 U.S. Dist. LEXIS 105466 (N.D. Cal. Oct. 26, 2009) .................... 6

*Garber v. Juniper Networks, Inc.*,
   No. C-06-04327 JW, 2006 WL 3365547 (N.D. Cal. Nov. 20, 2006)........................................ 9

*Hanlon v. Chrysler Corporation*,
   150 F.3d 1011 (9th Cir.1998) ............................................................................................... 10

*Hatamian v. Advanced Micro Devices, Inc.*
   No. 4:14-cv-00226-PJH (N.D. Cal. Feb. 4, 2014) ................................................................ 13

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ..................................................................................... 7, 8, 9, 12

*In re Cendant Corporation Litigation*,
   264 F.3d 201 (3d Cir. 2001) ............................................................................................ 11, 12

*In re Century Aluminum Co. Securities Litigation*,
   No. C 09-1001 SI, 2009 U.S. Dist. LEXIS 81205 (N.D. Cal. 2009)........................................ 6

*In re Equity Funding Corporation of America Securities Litigation*,
   416 F. Supp. 161 (C.D. Cal. 1976).......................................................................................... 7

*In re SiRF Technology Holdings, Inc. Securities Litigation*,
   No. C 08-0856 MMC, 2008 WL 2220601 (N.D. Cal. May 27, 2008) .................................... 11

*In re Surebeam Corporation Securities Litigation*,
   No. 03-cv-1721, 2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) ................................................ 11

*Johnson v. Celotex Corporation*,
   899 F.2d 1281 (2d Cir. 1990) .................................................................................................. 7

*Morrison v. National Australia Bank Ltd.*,
   130 S. Ct. 2869 (June 24, 2010) ............................................................................................. 3

*Perlmutter v. Intuitive Surgical, Inc.*,
   No. 10-CV-03451-LHK, 2011 WL 566814 (N.D. Cal. Feb. 15, 2011) .............................. 9, 11

*Richardson v. TVIA, Inc.*,
   No. C 06 06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) .................................. 11

KBC MOT. FOR CONSOLIDATION, APPOINTMENT AS LEAD PL. AND
APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL
CASE NO. 3:16-CV-05314-JST; 3:16-CV-05439-JST

ii

*Schriver v. Impac Mortgage Holdings, Inc.,*
No. SACV 06-31-CJC (RNBx), 2006 U.S. Dist. LEXIS 40607 (C.D. Cal. May 1, 2006) .......................................................................................................................................... 10

*Slaven v. BP America, Inc.,*
190 F.R.D. 649 (C.D. Cal. 2000) ............................................................................................... 10

*Staton v. Boeing Company,*
327 F.3d 938 (9th Cir. 2003) ..................................................................................................... 11

*Takeda v. Turbodyne Technologies, Inc.,*
67 F. Supp. 2d 1129 (C.D. Cal. 1999) ........................................................................................ 7

*Wenderhold v. Cylink Corporation,*
188 F.R.D. 577 (N.D. Cal. 1999) ................................................................................................ 9

*Zucker v. Zoran Corporation,*
No. C 06-04843 WHA, 2006 WL 3591156 (N.D. Cal. Dec. 11, 2006) .................................... 10

**STATUTES**

15 U.S.C. § 78u-4(a)(1) ................................................................................................................... 7

15 U.S.C. § 78u-4(a)(3)(A) .............................................................................................................. 8

15 U.S.C. § 78u-4(a)(3)(B) .................................................................................................... *passim*

**OTHER AUTHORITIES**

H.R. Conf. Rep. No. 104-369 (1995),
*reprinted in* 1995 U.S.C.A.A.N. 730 ................................................................................... 3, 12

S. Rep. No. 104-98 (1995),
*reprinted in* 1995 U.S.C.A.A.N. 679 ................................................................................... 3, 12

**RULES**

Fed. R. Civ. P. 23(a) ................................................................................................................... 9, 11

Fed. R. Civ. P. 42(a) ......................................................................................................................... 7

KBC MOT. FOR CONSOLIDATION, APPOINTMENT AS LEAD PL. AND
APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL
CASE NO. 3:16-CV-05314-JST; 3:16-CV-05439-JST

iii

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on December 22, 2016, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Jon S. Tigar, United States District Court, Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California 94102, KBC Asset Management NV ("KBC") will, and hereby does, move this Court pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), for an order (1) consolidating all Related Actions; (2) appointing KBC as Lead Plaintiff to represent all those who purchased or otherwise acquired Twitter, Inc. securities during the Class Period pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4.2; (3) and approving KBC's selection of Motley Rice LLC as Lead Counsel and Bleichmar, Fonti & Auld LLP as Liaison Counsel on behalf of the proposed Class.

This motion is made on the grounds that KBC is the "most adequate plaintiff" pursuant to the Exchange Act. *See* 15 U.S.C. § 78u-4(a)(3)(B). KBC meets the requirements of Federal Rule of Civil Procedure 23(a) because its claims are typical of other Class members' claims and because it will fairly and adequately represent the class.

This Notice of Motion and Motion is based upon the Memorandum of Points and Authorities in support thereof, the Declaration of Lesley E. Weaver, the pleadings and files herein, and such other written or oral argument as may be presented to the Court. A Proposed Order is also submitted herewith.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

KBC Asset Management NV ("KBC") respectfully submits this Memorandum of Points and Authorities in support of its Motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an order: (1) consolidating all Related Actions; (2) appointing KBC as Lead Plaintiff for a proposed Class consisting of all investors who purchased the securities of Twitter, Inc. ("Twitter" or the "Company"), during the period between February 6, 2015, and July 28, 2015, inclusive (the "Class Period"); and (3) approving KBC's selection of Motley Rice LLC ("Motley Rice") as Lead Counsel and Bleichmar, Fonti & Auld LLP ("BFA") as Liaison Counsel on behalf of the proposed Class.

## **STATEMENT OF THE ISSUES**

Pending before the Court are at least two related securities fraud class action lawsuits (the "Related Actions")[1] filed against Twitter, a global platform for public self-expression and conversation in real time, Richard Costolo, the Company's former Chief Executive Officer, and Anthony Noto, the Company's Chief Financial Officer (collectively, "Defendants"). The complaints of the Related Actions allege that, during the Class Period, Defendants repeatedly made materially misleading statements and/or failed to disclose information necessary to make various statements not materially misleading, thus artificially inflating the price of Twitter securities. When these misrepresentations were revealed to the public, the price of Twitter shares declined precipitously, causing the proposed Class to suffer significant losses and damages.

KBC submits that, pursuant to the Exchange Act, as amended by the PSLRA, it should be appointed Lead Plaintiff on behalf of the putative Class. KBC is a sophisticated institutional investor with ample resources, experience, and the capability to oversee complex litigation.

---

[1] The Related Actions are *Shenwick v. Twitter, Inc.*, No. 3:16-cv-05314-JST (the "Shenwick Action"), filed on September 16, 2016, and *Degenhardt v. Twitter, Inc.*, No. 3:16-cv-05439-JST (the "Degenhardt Action"), filed on September 23, 2016 (collectively, the "Related Actions").

KBC Mot. for Consolidation, Appointment as Lead Pl. and Approval of Selection of Lead and Liaison Counsel
Case No. 3:16-CV-05314-JST; 3:16-CV-05439-JST

2

Further, KBC has a significant financial stake in the pending litigation, having suffered losses of approximately $9,691,782.77.

In light of its significant losses, KBC has a large financial interest in prosecuting this case—an interest believed to be greater than that of any competing movant. KBC also meets the typicality and adequacy requirements set out in Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), because its claims are typical of those of absent Class members and it will fairly and adequately represent the interests of the proposed Class. Like the other members of the putative Class, KBC seeks recovery of losses incurred as a result of declines in the share price of Twitter stock purchased on the New York Stock Exchange ("NYSE") in the United States. *See Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2886 (2010) (holding that § 10(b) applies to securities registered on a U.S. stock exchange, irrespective of the nationality of the shareholder).

In a case of this type, it is essential that any lead plaintiff applicant be large and sophisticated enough to play a meaningful role in managing complex litigation. Here, KBC is the type of investor whose participation in securities class actions the PSLRA was intended to foster. *See* H.R. Conf. Rep. No. 104-369 at 34 (1995), *reprinted in* 1995 U.S.C.A.A.N. 730, 733; S. Rep. No. 104-98 at 6 (1995), *reprinted in* 1995 U.S.C.A.A.N. 679, 685. KBC has all the requisite experience and qualifications to prosecute securities class actions on behalf of injured investors. *See* Certification, Ex. A to the Decl. of Lesley E. Weaver in support of this Memorandum ("Weaver Decl.").

The Court also should approve KBC's selection of Motley Rice as Lead Counsel and BFA as Liaison Counsel on behalf of the proposed Class. The claims of the proposed Class will be protected by Motley Rice, whose attorneys have the expertise and resources necessary to handle litigation of this scale.

## **FACTUAL BACKGROUND**

Twitter is a global platform for public self-expression and conversation in real time, where any user can create a Tweet and any user can follow other users. The Company's main source of revenue is advertising. Because advertising revenue is driven by the total number of

KBC MOT. FOR CONSOLIDATION, APPOINTMENT AS LEAD PL. AND
APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL
CASE NO. 3:16-CV-05314-JST; 3:16-CV-05439-JST

3

users on the platform and, equally as important, the level of engagement of these users, the Company and investment analysts have focused closely on metrics measuring total users and user engagement. Twitter reported two primary user metrics: Monthly Active Users or "MAUs" (a measure of the total user base) and timeline views (a measure of user engagement).

Prior to the beginning of the Class Period, at an all-day meeting with analysts on November 12, 2014, Defendants reported that the number of MAUs was expected to increase significantly "to over 550 million [MAUs] in the intermediate term and … over a billion … [MAUs] over the longer term." Defendants announced several new product initiatives designed to drive growth in MAUs and user engagement. Defendants also announced that Twitter would discontinue reporting its primary user engagement metric, timeline views, stating the reason for the change was that the metric was an unrepresentative measure of user engagement and no longer reflective of Twitter's business.

The Class Period starts on February 6, 2015. After the market closed on February 5, 2015, Twitter released its fourth quarter and fiscal year 2014 financial results. The Company reported non-GAAP net income of $79 million, or non-GAAP earnings per share ("EPS") of $0.12, and revenue of $479 million for the fourth quarter ended December 31, 2014. Additionally, the Company reported non-GAAP net income of $101 million, or non-GAAP EPS of $0.14, and revenue of $1.4 billion for the fiscal year ended December 31, 2014. The Company blamed lower than expected MAU growth on "quarter-specific factors … which include seasonality and a couple of issues related to the launch of iOS 8." Furthermore, the Company reiterated its outlook for strong MAU growth going forward and emphasized the success of the new product initiatives designed to "drive [MAU] growth." Defendants also reiterated that Twitter would discontinue reporting its primary user engagement metric, timeline views.

Also on February 5, 2015, Twitter held a conference call for investors and analysts during which defendant Costolo responded to analysts' questions regarding customer growth by stating that *"[t]he user numbers we saw on January, again, indicate that our MAU trend has already turned around and that Q1 trend is likely to be back in the range of absolute net ads that we*

KBC MOT. FOR CONSOLIDATION, APPOINTMENT AS LEAD PL. AND APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL CASE NO. 3:16-CV-05314-JST; 3:16-CV-05439-JST

4

*saw during the first three quarters of 2014,"* a period when the Company had appeared to have regained momentum.

Following Defendants' statements on February 5, 2015, Twitter's stock price increased nearly 17% in one day to close at $48.01 per share on February 6, 2015, on volume of 102 million shares.

On April 28, 2015, Twitter released its first quarter 2015 financial results. The Company reported non-GAAP income of $47 million, or $0.07 non-GAAP EPS, and revenue of $436 million for the first quarter ended March 31, 2015. Twitter projected revenue of $470 million to $485 million for the second quarter of 2015, and lowered its full-year 2015 revenue forecast from $2.30-2.35 billion to $2.17-2.27 billion. The Company also reported that Twitter's MAUs only increased 5% over the prior quarter, including 3% growth in U.S. MAUs.

Also on April 28, 2015, Twitter held a conference call for investors and analysts during which defendant Noto admitted that *"[W]e expect the factors which led to our marginally slower growth in Q1 to continue for the full year of 2015"* but that *"[w]e are very encouraged by the growth we've experienced thus far."*

As a result of this news, the price of Twitter stock declined $9.39 per share, or 18%, to close at $42.27 per share on April 28, 2015, on volume of over 77 million shares. The following day, April 29, 2015, the price of Twitter stock declined $3.78 per share, or nearly 9%, to close at $38.49 per share, on volume of over 120 million shares. However, the stock continued to trade at artificially inflated levels.

On July 28, 2015, after the market closed, Twitter issued a press release announcing its second quarter 2015 financial results. The Company reported non-GAAP income of $49 million, or $0.07 non-GAAP EPS, and revenue of $502 million for the second quarter ended June 30, 2015. Additionally, the Company projected revenue of $545 million to $560 million for the third quarter of 2015, and revenue of the range of $2.20-2.27 billion for the full year. The Company reported that Twitter's MAUs had increased by only 2 million users over the prior quarter, representing growth of less than 1%.

KBC MOT. FOR CONSOLIDATION, APPOINTMENT AS LEAD PL. AND APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL CASE NO. 3:16-CV-05314-JST; 3:16-CV-05439-JST

5

Also on July 28, 2015, Twitter held a conference call for investors and analysts during which defendant Noto admitted that "*we do not expect to see sustained meaningful growth in MAUs until we start to reach the mass market,*" which "*[w]e expect . . . will take a considerable period of time,*" and that "*in the near term, our organic growth is going to be very low, as it was this quarter . . . .*"

On this news, the price of Twitter stock declined $5.30 per share, or nearly 15%, to close at $31.24 per share on July 29, 2015, on volume of nearly 93 million shares. The stock currently trades at less than $20 per share.

As a result of Defendants' false statements, Twitter common stock traded at artificially inflated prices during the Class Period. As the above revelations seeped into the market, the price of Twitter stock declined 40% from its Class Period high of $52.87 per share on April 7, 2015, causing economic harm and damages to KBC and other members of the Class.

## ARGUMENT

### A.    The Related Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this title [] has been filed," courts shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii); *see also In re Century Aluminum Co. Sec. Litig.*, No. C 09-1001 SI, 2009 U.S. Dist. LEXIS 81205, at *6-8 (N.D. Cal. 2009) ("A court must rule on a motion to consolidate before it can rule on a motion to appoint a lead plaintiff."). There are at least two related securities class actions pending in this District on behalf of investors who purchased Twitter securities during the Class Period: (1) the Shenwick Action; and (2) the Degenhardt Action.

Consolidation pursuant to Rule 42(a) is proper when actions involve common questions of law and fact. *See City of Ann Arbor Emps.' Ret. Sys. v. Accuray Inc.*, No. C 09-03362 CW, 2009 U.S. Dist. LEXIS 105466, at *4-5 (N.D. Cal. Oct. 26, 2009); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1150 (N.D. Cal. 1999); *In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161, 175 (C.D. Cal. 1976).

KBC MOT. FOR CONSOLIDATION, APPOINTMENT AS LEAD PL. AND
APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL
CASE NO. 3:16-CV-05314-JST; 3:16-CV-05439-JST

6

Courts have recognized that shareholder class action suits, in particular, are ideally suited for consolidation pursuant to Rule 42(a) because consolidation of many actions involving the same parties and issues expedites pretrial and discovery proceedings, reduces duplication, and minimizes the costs and time expended by all persons involved. *See Equity Funding*, 416 F. Supp. at 176. Likewise, Section 21D(a)(3)(B) of the Exchange Act contemplates the consolidation of multiple actions "asserting substantially the same claim or claims." *See* 15 U.S.C. § 78u-4(a)(3)(B). "Neither Rule 42 nor the PSLRA demands that the actions be identical before they may be consolidated." *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999) (consolidating six actions with substantial overlap in defendants and different class periods).

Each of the Related Actions asserts essentially the same class claims brought on behalf of purchasers of Twitter securities who purchased in reliance on Defendants' materially false and misleading statements and/or omissions during the Class Period. Consolidation is appropriate when, as here, there are actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Takeda*, 67 F. Supp. 2d at 1133; *see also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). Here, the requirements for consolidation are met and the Related Actions should be consolidated.

**B. KBC Should Be Appointed Lead Plaintiff**

KBC meets the prerequisites for appointment as Lead Plaintiff in this action. The PSLRA provides a straightforward procedure for selecting lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth the procedure for selecting lead plaintiff); *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) (same). Section 21D(a)(3)(A)(i) of the PSLRA provides that within 20 days after the date on which a class action is filed, the plaintiff shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class:

KBC MOT. FOR CONSOLIDATION, APPOINTMENT AS LEAD PL. AND
APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL
CASE NO. 3:16-CV-05314-JST; 3:16-CV-05439-JST

7

(I)     of the pendency of the action, the claims asserted therein, and the purported class period; and

(II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Under the PSLRA, a court is to consider any timely motion and appoint the movant that the court determines to be most capable of adequately representing the interests of the class as lead plaintiff. Specifically, the PSLRA provides that a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (. . . the 'most adequate plaintiff')." 15 U.S.C. § 78u-4(a)(3)(B)(i).

In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons who: (1) timely filed a complaint or made a motion to serve as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Cavanaugh*, 306 F.3d at 729-30. KBC respectfully submits that it is the presumptive "most adequate plaintiff," and should be appointed Lead Plaintiff, because it has complied with PSLRA procedural requirements, holds the largest financial interest of any known movant, and satisfies Rule 23's typicality and adequacy requirements.

### 1.     KBC Has Satisfied The PSLRA's Procedural Requirements

KBC has filed this motion to serve as Lead Plaintiff in a timely manner. On September 16, 2016, the plaintiff in the first-filed action against Twitter published a notice of the action pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i). *See* Weaver Decl., Ex. B. The notice advised Class members of the existence of the lawsuit and described the claims asserted therein. The notice also advised Class members of their right to file a motion to be appointed lead plaintiff within 60 days of the date of the notice, *i.e.*, on or before November 15, 2016. KBC has filed this motion within the time period prescribed by the PSLRA.

KBC MOT. FOR CONSOLIDATION, APPOINTMENT AS LEAD PL. AND APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL CASE NO. 3:16-CV-05314-JST; 3:16-CV-05439-JST

8

## 2. KBC Has The Largest Financial Interest In The Relief Sought By The Class

In selecting the presumptive lead plaintiff, "the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 WL 566814, at *2 (N.D. Cal. Feb. 15, 2011) (citing *Cavanaugh*, 306 F.3d at 529-30); *see also Garber v. Juniper Networks, Inc.*, No. C-06-04327 JW, 2006 WL 3365547, at *1-2 (N.D. Cal. Nov. 20, 2006) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)).

During the Class Period, KBC purchased 647,544 shares of Twitter common stock on the NYSE at artificially inflated prices, and suffered losses of $9,691,782.77, when calculated on a last-in-first-out basis, and $9,799,353.55, when calculated on a first-in-first-out basis. *See* Weaver Decl., Exs. A, C (Certification and Loss Chart, respectively). KBC is not aware of any other movant with a larger financial interest in the outcome of this action.

## 3. KBC Satisfies Rule 23's Typicality And Adequacy Requirements

In addition to the largest financial interest requirement, the PSLRA also directs that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). With respect to a class representative's qualifications, Rule 23(a) requires that the representative's claims be typical of the claims of the class and that the representative will fairly and adequately protect the interests of the class. With respect to class certification, Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims are typical of those of the class; and (4) the representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). However, "[a]t the lead plaintiff selection stage, all that is required is a 'preliminary showing' that the lead plaintiff's claims are typical and adequate." *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1158 (N.D. Cal. 1999) (quoting *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 587 (N.D. Cal. 1999)); *see also Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31-CJC (RNBx), 2006 U.S. Dist. LEXIS 40607, at *16 (C.D. Cal. May 1, 2006) ("the prospective lead plaintiff need only make a *prima facie* showing that it meets the typicality and adequacy factors").

KBC MOT. FOR CONSOLIDATION, APPOINTMENT AS LEAD PL. AND APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL CASE NO. 3:16-CV-05314-JST; 3:16-CV-05439-JST

9

As detailed below, KBC satisfies the typicality and adequacy requirements of Rule 23(a), and is qualified to be appointed lead plaintiff in this action.

### a. KBC's Claims Are Typical Of Those Of The Class

The typicality requirement of Rule 23(a)(3) is satisfied when the plaintiff "(1) suffered the same injuries as class members; (2) as a result of the same course of conduct; and (3) their claims are based on the same legal issues." *Zucker v. Zoran Corp.*, No. C 06-04843 WHA, 2006 WL 3591156, at *3 (N.D. Cal. Dec. 11, 2006). Rule 23(a) requires only that resolution of the common questions affect all, or a substantial number of, class members. *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 657 (C.D. Cal. 2000).

Here, the legal and factual bases of the KBC's claims are typical of the claims of the other members of the Class, in that KBC and other Class members must show:

(a)     whether Defendants' actions violated the federal securities laws;

(b)     whether Defendants caused Twitter to issue false and misleading statements;

(c)     whether Defendants' conduct caused the market price of Twitter common stock to be artificially inflated during the Class Period and thereby caused the losses suffered by class members; and

(d)     whether the members of the class have sustained damages and, if so, what is the proper measure of damages.

Because there are well-defined common questions of law and fact involved in this case, the claims asserted by KBC, who is not subject to any unique defenses, are typical of the claims of the members of the proposed Class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("Under [Rule 23's] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."). These shared claims, which are based on the same legal theories and arise from the same events and course of conduct as the Class's claims, satisfy Rule 23(a)(3)'s typicality requirement. *In re Surebeam Corp. Sec. Litig.*, No. 03-cv-1721, 2004 WL 5159061, at *6 (S.D. Cal. Jan. 5, 2004) (reciting typicality standard).

KBC MOT. FOR CONSOLIDATION, APPOINTMENT AS LEAD PL. AND APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL CASE NO. 3:16-CV-05314-JST; 3:16-CV-05439-JST

10

### b. KBC Will Fairly And Adequately Protect The Interests Of The Class

The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The test for adequacy asks whether the class representative and his counsel 'have any conflicts of interest with other class members' and whether the class representative and his counsel will 'prosecute the action vigorously on behalf of the class.'" *Perlmutter*, 2011 WL 566814, at \*13 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)). The adequacy requirement is met if no conflict exists between the representative's interests and those of the class, and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation. *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at \*4 (N.D. Cal. Apr. 16, 2007).

KBC will fairly and adequately represent the interests of the proposed Class. The interests of KBC are not antagonistic to, and are clearly aligned with, with those of the Class. Moreover, KBC is exactly the type of investor Congress sought to encourage to assume a more prominent role in securities litigation with the enactment of the PSLRA's lead plaintiff provisions. *See In re SiRF Tech. Holdings, Inc. Sec. Litig.*, No. C 08-0856 MMC, 2008 WL 2220601, at \*3 (N.D. Cal. May 27, 2008) (noting that "by enacting the PSLRA, Congress sought to increase the participation of institutional investors in securities class actions"); *see also Perlmutter*, 2011 WL 566814, at \*13 ("Th[e] decision to appoint . . . an institutional investor . . . also comports with the PSLRA's goal to increase the likelihood that institutional investors would serve as lead plaintiffs."). Congress noted in the PSLRA Statement of Managers Report that the PSLRA was formulated "to increase the likelihood that institutional investors will serve as lead plaintiff[]," in part, because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." *In re Cendant Corp. Litig.*, 264 F.3d 201, 244, 264 (3d Cir. 2001) (quoting S. Rep. No. 104-98, at 10 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690 and H.R. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733)). KBC

KBC MOT. FOR CONSOLIDATION, APPOINTMENT AS LEAD PL. AND APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL CASE NO. 3:16-CV-05314-JST; 3:16-CV-05439-JST

11

suffered substantial losses as a result of Defendants' alleged fraud, and its significant interest in the outcome of this case will ensure vigorous prosecution of the action.

KBC, based in Brussels, Belgium, manages assets of approximately $225 billion. KBC has sufficient resources to adequately litigate the action and supervise Class counsel, and is precisely the type sophisticated institutional investor whose participation as lead plaintiff the PSLRA seeks to encourage. KBC understands the fiduciary duties of a lead plaintiff, and has served in that capacity in the past, including as Co-Lead Plaintiff in *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, No. 11-cv-08332-AJS, 2012 WL 1339678 (N.D. Ill. Apr. 18, 2012). *See* Weaver Decl., Ex. A. On August 5, 2014, the court in that action issued an order granting final approval to a settlement resolving all claims in exchange for payment of $60 million for the benefit of the class.

KBC's adequacy also is demonstrated by the fact that it has selected Lead Counsel that, as discussed in the next section, is highly experienced in vigorously and efficiently prosecuting securities class actions such as this one. *See* Weaver Decl., Exs. E, F (Firm Resumes of Motley Rice and BFA, respectively).

Because KBC timely filed a motion to be appointed Lead Plaintiff, has the largest financial interest in the outcome of the litigation of any movant, and meets the PSLRA's adequacy and typicality requirements, it should be appointed Lead Plaintiff.

### C.  The Court Should Approve KBC's Selection Of Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to the court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). "[T]he court should generally employ a deferential standard in reviewing the lead plaintiff's choices." *Cendant*, 264 F.3d at 274. Courts should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the plaintiff class." H.R. Conf. Rep. No. 104-369 (1995), at *35, reprinted in 1995 U.S.C.C.A.N. at 734; *see also Cavanaugh*, 306 F.3d at 734 ("Selecting a lawyer in whom a litigant has confidence is an important client prerogative and we will not lightly infer that Congress meant to take away this prerogative from securities plaintiffs. And,

KBC MOT. FOR CONSOLIDATION, APPOINTMENT AS LEAD PL. AND APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL
CASE NO. 3:16-CV-05314-JST; 3:16-CV-05439-JST

12

indeed, it did not. While the appointment of counsel is made subject to the approval of the court, the Reform Act clearly leaves the choice of class counsel in the hands of the lead plaintiff.").

KBC has selected Motley Rice, highly-qualified counsel, to serve as Lead Counsel for the proposed Class. Motley Rice has substantial experience in the prosecution of shareholder and securities class actions. As the court noted in *KBC Asset Mgmt. NV v. McNamara*, No. 13-1854-LPS-CJB, slip op. at 13 (Del. Ch. Feb. 2, 2015), Motley Rice is "comprised of attorneys who possess extensive experience as lead or-co-lead counsel in complex litigation, and who have successfully represented shareholders in class and derivative actions." *See* Weaver Decl., Ex. G; *see also* Motley Rice Firm Resume, Weaver Decl., Ex. E. Moreover, Motley Rice's abilities are evidenced by the fact that it currently serves, or has served, as Lead or Co-Lead Counsel in securities fraud class actions pending in this District. *See Aruliah v. Impax Labs., Inc.,* No. 3:14-cv-03673-JD, Dkt. No. 44 (N.D. Cal. Nov. 19, 2014) (appointing Motley Rice attorneys as Lead Counsel); *Hatamian v. Advanced Micro Devices, Inc.*, No. 4:14-cv-00226-PJH, Dkt. No. 37 (N.D. Cal. Feb. 4, 2014) (approving Motley Rice as Co-Lead Counsel).

BFA is among the preeminent securities class action law firms in the country. Attorneys at BFA have extensive experience litigating securities actions in the Federal Courts of California and the Ninth Circuit, including, for instance, *In re Cavanaugh,* 306 F.3d 726 (9th Cir. 2002); *In re NorthPoint Inc. Sec. Litig.*, 184 F. Supp. 2d 991 (N.D. Cal. 2001); *In re Commtouch Software Ltd. Sec. Litig.*, C 01-00719 WHA, 2002 U.S. Dist. LEXIS 13742 (N.D. Cal. July 24, 2002); *In re Broadcom Corp. Class Action Litig.*, 06-cv-05036 (C.D. Cal. 2006) and *New Mexico State Investment Council v. Ernst & Young*, 641 F.3d 1089 (9th Cir. 2011). BFA's partners have served as lead and co-lead counsel on behalf of dozens of institutional investors, and have secured significant recoveries on behalf of investors in some of the most prominent fraud cases in recent decades. The firm's recent matters include the recovery of a $120 million settlement in *Freedman et al. v. Weatherford International, Ltd.*, 12-cv-02121 (S.D.N.Y); a $219 million settlement in *In re Genworth Financial Inc. Sec. Litig.*, 14-cv-00682 (E.D. Va.), the largest securities class action recovery ever achieved in the Eastern District of Virginia; $234 million in settlements in *In re MF Global Holdings Sec. Litig.*, 11-cv-07866 (S.D.N.Y); and a $97.5

KBC Mot. for Consolidation, Appointment as Lead Pl. and Approval of Selection of Lead and Liaison Counsel
Case No. 3:16-CV-05314-JST; 3:16-CV-05439-JST

13

million settlement in *In re Computer Sciences Corp. Sec. Litig.*, No. 11-cv-0610 (E.D. Va.), the second largest all-cash, class-wide recovery in a securities case pending in the Eastern District of Virginia. *See* Weaver Decl., Ex. E. Thus, the Court can be assured that by granting this motion, the proposed Class will receive the highest caliber of legal representation.

## CONCLUSION

For the foregoing reasons, KBC respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint KBC as Lead Plaintiff; and (3) approve its selection of Motley Rice as Lead Counsel and BFA as Liaison Counsel on behalf of the Class.

Dated: November 15, 2016    Respectfully submitted,

BLEICHMAR FONTI & AULD LLP

By: _s/ Lesley E. Weaver_____
Lesley E. Weaver
lweaver@bfalaw.com
1901 Harrison Street, Suite 1100
Oakland, CA 94612
Telephone: (510) 844-7759
Facsimile: (212) 205-3960

MOTLEY RICE LLC
James M. Hughes
jhughes@motleyrice.com
Gregg S. Levin
glevin@motleyrice.com
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450

*Counsel for KBC Asset Management NV and [Proposed] Lead Counsel for the Class*

KBC MOT. FOR CONSOLIDATION, APPOINTMENT AS LEAD PL. AND
APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL
CASE NO. 3:16-CV-05314-JST; 3:16-CV-05439-JST