UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF CORAL SPRINGS POLICE OFFICERS PENSION PLAN,<br><br>Plaintiff,<br><br>v.<br><br>APPLE, INC., et al.,<br><br>Defendants. | Case No. 25-cv-06252-NW<br><br>**ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL**<br><br>Re: ECF Nos. 12; *Tucker* ECF Nos. 26, 29, 38 |

This is a securities putative class action brought against Apple, Inc. and its directors (collectively "Apple"). Before the Court are three motions to serve as lead plaintiffs and lead counsel filed by National Pension Service, on behalf of the National Pension Fund ("NPS"), Union Investment Luxembourg S.A. ("Union"), and KBC Asset Management NV ("KBC"). Having considered the parties' briefs and the relevant legal authority, and concluding that oral argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the hearing set for December 3, 2025. For the reasons stated below, the Court GRANTS NPS's motion and DENIES Union's and KBC's motions.

**I.   BACKGROUND**

Though only a few months old, this action has a convoluted procedural history. The instant case is the second of two actions filed in this District alleging securities losses related to Apple's representations about its Artificial Intelligence ("AI") technology. The first case, *Tucker v. Apple Inc.*, No. 5:25-cv-05197-NW (N.D. Cal.) was filed on June 20, 2025; this case was filed on July 25, 2025. At the request of the *Coral Springs* Plaintiffs, and without objection from any other party, the Court related the two actions on August 12, 2025. *Tucker*, ECF No. 19; *see also Coral Springs*, ECF No. 7.

Plaintiff in *Tucker* filed his securities class action, individually and on behalf of all others similarly situated, bringing claims under sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5. Compl. ¶ 1, ECF No. 1. As required in actions brought under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Plaintiff in *Tucker* published a notice of pendency of the underlying action and advised members of the putative class that they, pursuant to statute, had 60 days to seek appointment as lead plaintiff for the class. *Tucker*, ECF No. 23. On August 19, 2025, four class members separately filed motions that requested the following: (1) to consolidate *Tucker* and *Coral Springs* into a single action; (2) to be appointed lead plaintiff, and (3) for their counsel to be appointed lead counsel. *Tucker*, ECF Nos. 26 ("NPS Mot."), 29 ("Union Mot."), 33 ("Merseyside Mot."), 38 ("KBC Mot."). Merseyside withdrew its motion the following day. *See Tucker*, ECF No. 45 (withdrawing ECF No. 33). Two days later, on August 22, 2025, Plaintiff in *Tucker* voluntarily dismissed his entire action and indicated that Plaintiff's claims, which were all brought on behalf of a class, were encompassed by those alleged in *Coral Springs*. The case closed with three pending motions to appoint lead plaintiff from: (1) NPS, (2) Union, and (3) KBC. *Tucker* ECF Nos. 26, 29, 38.

Because *Tucker* was dismissed before the parties were set to respond to the motions, the parties filed their opposition and reply briefs in the *Coral Springs* docket on September 2, 2025, and September 9, 2025.[1] *See Coral Springs*, ECF Nos. 13 ("NPS Opp."), 14 ("Union Notice/Opp."),[2] 15 ("KBC Opp."), 23 ("NPS Reply"), 24 ("KBC Reply"), and 25 ("Union Reply").

---

[1] NPS concurrently filed the motion it submitted in *Tucker* so that it would be part of the record in the instant action.

[2] Union's response indicated that it did not oppose NPS's request for appointment. ECF No. 14. Union conceded that NPS had the largest interest at stake, though it "remain[ed] ready, willing, and able to serve as Lead Plaintiff if the Court decline[d] to appoint NPS." ECF No. 14. In its reply briefing, Union clarified that it opposed KBC's motion as KBC had a "significantly smaller financial interest" at stake than either Union or NPS. ECF No. 25. Union indicated that it would stand on its motion should the Court decline to appoint NPS. *Id.*

2

Having considered the parties' briefs and the relevant legal authority, the Court APPOINTS NPS as Lead Plaintiff and APPROVES NPS's selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") to be appointed as lead counsel for the class.

## II.     LEGAL STANDARD

### A.     Lead Plaintiff

Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA, governs appointment of lead plaintiffs in all private securities class actions. *See* 15 U.S.C. §§ 77z-1(a)(3), 78u-4(a)(3).  The district court shall appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members," also referred to as the "most adequate plaintiff."  §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i).

The PSLRA "provides a simple three-step process for identifying the lead plaintiff." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).  At the first step, the pendency of the first-filed action, the claims made, and the purported class period must be publicized in a "widely circulated national business-oriented publication or wire service." *Id.* (internal quotation marks and citation omitted).  Second, the court must identify the presumptive lead plaintiff, *i.e.*, "the movant with the largest financial interest who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021) (internal quotation marks and citation omitted).  "At step three, the process turns adversarial," *Mersho*, 6 F.4th at 899, and other hopeful plaintiffs may attempt to "rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Cavanaugh*, 306 F.3d at 730.  "If the presumption is not rebutted, the presumptively most adequate plaintiff must be selected as lead plaintiff." *Mersho*, 6 F.4th at 899.

### B.     Lead Counsel

Under the PSLRA, the lead plaintiff has the right, subject to court approval, to select and retain counsel to represent the class. *See Cohen v. U.S. Dist. Ct.*, 586 F.3d 703, 711 (9th Cir. 2009).  "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Id.* at 712.

### III. DISCUSSION

#### A. Lead Plaintiff

The Court finds, and no party disputes, that publication of notice of this lawsuit was completed within the required timeframe. Plaintiff Tucker filed suit on June 20, 2025, and caused notice of the action to be published via *ACCESS Newswire* that same day. In response, all movants filed motions for appointment as lead plaintiff and lead counsel on August 19, 2025. *See* NPS Mot., Union Mot., and KBC Mot.

The main point of contention between the parties is the proper methodology for determining financial interest. The law requires that the court "select accounting methods that are both rational and consistently applied." *Cavanaugh*, 306 F.3d at 730 n.4. Within the Ninth Circuit, courts "generally consider the four '*Lax*' factors, first articulated in the *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997), to determine which plaintiff has the greatest financial interest." *Hoang v. ContextLogic, Inc.*, No. 21-CV-03930-BLF, 2022 WL 1539533, at *4 (N.D. Cal. May 16, 2022). Those factors are: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *Sneed v. AcelRx Pharms., Inc.*, No. 21-CV-04353-BLF, 2021 WL 5964596, at *2 (N.D. Cal. Dec. 16, 2021). The last factor is the weightiest, and most courts in the Ninth Circuit use the last in, first out ("LIFO") methodology to calculate losses. *Bodri v. Gopro, Inc.*, No. 16-CV-00232-JST, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016) (internal alteration and citations omitted); *see also Lewis v. CytoDyn, Inc.*, No. C21-5190 BHS, 2021 WL 3709291, at *4 (W.D. Wash. Aug. 19, 2021) (collecting cases) ("The trend among courts nationwide has been to use LIFO in calculating competing movants' estimated losses."). Using the LIFO methodology, NPS incurred a loss of $87 million, NPS Mot. at 5, the highest amount of any investor.

NPS has also made a *prima facie* showing of its typicality and adequacy as a lead plaintiff. *See Cavanaugh,* 306 F.3d at 730–31. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named

4

plaintiffs, and whether other class members have been injured by the same course of conduct." *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 5:11-CV-04003-LHK, 2012 WL 78780, at *5 (N.D. Cal. Jan. 9, 2012) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The test for adequacy is whether the class representative and his counsel 'have any conflicts of interest with other class members' and whether the class representative and his counsel will 'prosecute the action vigorously on behalf of the class.'" *City of Royal Oak Ret. Sys.*, 2012 WL 78780, at *5 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)). "NPS satisfies the typicality requirement because, just like all other class members, it seeks recovery of losses on its investments in Apple securities that it incurred as a result of Defendants' misrepresentations and omissions." NPS Mot. at 8. For that reason, "its interest in vigorously pursuing the claims against Defendants . . . are aligned with the interests of the members of the class who were similarly harmed," making NPS an adequate representative. *Id.* at 9.

The Court finds that NPS is the presumptively adequate lead plaintiff, so it moves to the third step in the analysis and considers the attempts of other lead plaintiff hopefuls to rebut this presumption. Here, KBC challenges NPS's motion on two grounds, neither of which are persuasive. First, KBC argues that NPS's loss figures are unreliable. For unexplained reasons, KBC urges the Court to use a different accounting methodology to calculate financial interest, the first in, first out ("FIFO") method, and it faults NPS for failing to provide the data necessary to conduct a FIFO analysis. But despite KBC's protestations to the contrary, the Court does not have a "statutory mandate to calculate NPS's losses under the [FIFO] method." KBC Opp. at 1. The Court's mandate is to "calculate each potential lead plaintiff's financial interest in the litigation" using a method that is "both rational and consistently applied." *Cavanaugh*, 306 F.3d at 730 n.4. LIFO satisfies that mandate, as is evident by the scores of courts that have relied on its methodology.

KBC next insists that NPS is not the real party-in-interest and so NPS does not have standing to bring suit. KBC is wrong: "courts have routinely found asset managers like [NSP, acting as asset manager to the Republic of Korea National Pension Fund] to have standing to represent their investment funds under the prudential exception to Article III standing." *SEB*

5

*Investment Mgmt. AB v. Wells Fargo & Co.*, No. 22-cv-03811, 2025 WL 1243818, at *4 (N.D. Cal. Apr. 25, 2025) (collecting cases, and holding that investment manager's "reliance on the prudential standing exception—and the potential 'sideshow' it may create—does not render it atypical"); *Trs. of Welfare & Pension Funds of Loc. 464A Pension Fund v. Enphase Energy, Inc.*, No. 24-CV-09038-JST, 2025 WL 2410521, at *3 (N.D. Cal. Aug. 20, 2025). NPS meets the prudential exception standard because it has "(1) a close relationship to the injured party; and (2) a barrier to the injured party's ability to assert its own interests." *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 109 (2d Cir. 2008).

The Court has no reason to set aside NPS as the presumptively adequate lead plaintiff in this litigation; the Court GRANTS NPS's motion.

### B. Lead Counsel

The PSLRA requires the lead plaintiff shall, subject to court approval, select and retain counsel to represent the putative class. 15 U.S.C. § 78U-4(a)(3)(B)(v). "A court may only override the lead plaintiff's choice of counsel where the court believes it necessary to protect the interests of the class." *Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC RNBX, 2006 WL 6886020, at *11 (C.D. Cal. May 2, 2006) (internal quotation marks omitted); *see also Cavanaugh*, 306 F.3d at 374 ("While the appointment of counsel is made subject to the approval of the court, the [PSLRA] clearly leaves the choice of class counsel in the hands of the lead plaintiff."). NPS has selected Kessler Topaz to serve as its counsel. The firm has extensive experience litigating securities class actions and has been appointed lead counsel or co-lead counsel in several such actions. *See, e.g.*, *Enphase*, 2025 WL 2410521, at *4. KBC does not dispute that Kessler Topaz's qualifications to prosecute this action. Therefore, the Court appoints Kessler Topaz as lead counsel.

//
//
//
//
//

## IV. CONCLUSION

NPS's motion for appointment as lead plaintiff is GRANTED and NPS is APPOINTED as Lead Plaintiff in this case. Kessler Topaz is APPOINTED as Lead Counsel.

**IT IS SO ORDERED.**

Dated: November 28, 2025

Noël Wise
United States District Judge