LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
 *melanie.blunschi@lw.com*
Whitney B. Weber (Bar No. 281160)
 *whitney.weber@lw.com*
Jordan Mundell (Bar No. 324110)
 *jordan.mundell@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Michele D. Johnson (Bar No. 198298)
 *michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626
Telephone: +1.714.540.1235

Jason C. Hegt (*pro hac vice*)
*jason.hegt@lw.com*
1271 Avenue of the Americas
New York, New York 10020
Telephone: +1.212.906.1200

*Attorneys for Defendants Apple Inc., Timothy D. Cook, Luca Maestri, Kevan Parekh, Craig Federighi, and Kelsey Peterson*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| CITY OF CORAL SPRINGS POLICE OFFICERS' PENSION PLAN, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.; TIMOTHY D. COOK; LUCA MAESTRI; KEVAN PAREKH; CRAIG FEDERIGHI; and KELSEY PETERSON,<br><br>Defendants. | Case No. 5:25-cv-06252-NW<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Date: May 20, 2026<br>Time: 9:00 A.M.<br>Courtroom: Courtroom 3 – 5th Floor<br>Judge: Hon. Noël Wise |

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ........................................................................................................ 1

II. ARGUMENT .............................................................................................................. 3

    A.  Plaintiff Does Not Plead Any Actionable Misstatement Or Omission................... 3

        1.  The Siri Features Statements Were Not False Or Misleading............................................................................................ 3

        2.  The *Epic* Statements Were Not False Or Misleading ............................... 9

    B.  Plaintiff Does Not Adequately Plead A Strong Inference Of Scienter................. 13

        1.  Defendants Were Not "Financially Motivated" To Commit Fraud ..................................................................................................... 13

        2.  Defendants Did Not Know Of Or Disregard Contemporaneous Facts ............................................................................. 13

    C.  Plaintiff Does Not Adequately Plead Loss Causation ........................................ 17

    D.  Plaintiff Does Not Adequately Plead Scheme Liability ...................................... 20

III. CONCLUSION.......................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*AMI – Gov't Emps. Provident Fund Mgmt. Co. Ltd. v. Alphabet Inc.*,
2024 WL 4353637 (N.D. Cal. Sept. 3, 2024) ........................................................................ 7, 9

*Baker v. Twitter, Inc.*,
2023 WL 6932568 (C.D. Cal. Aug. 25, 2023)............................................................................ 10

*Borteanu v. Nikola Corp.*,
2023 WL 1472852 (D. Ariz. Feb. 2, 2023)........................................................................... 5, 15

*Brendon v. Allegient Travel Co.*,
412 F. Supp. 3d 1244 (D. Nev. Sept. 9, 2019)........................................................................ 13

*Cai v. Visa Inc.*,
2025 WL 4091993 (N.D. Cal. Dec. 10, 2025).................................................................... 19, 20

*Chang v. Accelerate Diagnostics, Inc.*,
2016 WL 3640023 (D. Ariz. Jan. 28, 2016) ............................................................................ 12

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ................................................................................................ 7, 10

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
2019 WL 6877195 (N.D. Cal. Dec. 17, 2019)........................................................................... 16

*Construction Laborers Pension Trust of Greater St. Louis v. Funko Inc.*,
166 F.4th 805 (9th Cir. 2026) .................................................................................................. 16

*Curry v. Yelp Inc.*,
2015 WL 7454137 (N.D. Cal. Nov. 24, 2015) ...................................................................... 5, 16

*Dolly v. GitLab Inc.*,
2025 WL 2372965 (N.D. Cal. Aug. 13, 2025) .......................................................................... 17

*Epic Games, Inc. v. Apple Inc.*,
161 F.4th 1162 (9th Cir. 2025) ................................................................................................. 10

*Espy v. J2 Glob., Inc.*,
99 F.4th 527 (9th Cir. 2024) ..................................................................................................... 18

*Golub v. Gigamon Inc.*,
372 F. Supp. 3d 1033 (N.D. Cal. 2019), *aff'd*, 994 F.3d 1102 (9th Cir. 2021) ....................... 6

*Habelt v. iRhythm Techs., Inc.*,
2022 WL 971580 (N.D. Cal. Mar. 31, 2022)............................................................................ 15

*Hampton v. Aqua Metals, Inc.*,
   2020 WL 6710096 (N.D. Cal. Nov. 16, 2020) .......................................................................... 4

*In re Accuray, Inc. Sec. Litig.*,
   757 F. Supp. 2d 936 (N.D. Cal. 2010) ..................................................................................... 5

*In re Alphabet, Inc. Sec. Litig.*,
   1 F.4th 687 (9th Cir. 2021) .................................................................................................... 15

*In re Apple Inc. Sec. Litig.*,
   2020 WL 2857397 (N.D. Cal. June 2, 2020)........................................................................... 15

*In re BofI Holding, Inc. Sec. Litig.*,
   977 F.3d 781 (9th Cir. 2020) ........................................................................................... 17, 18

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010) .................................................................................................. 8

*In re Eargo, Inc. Sec. Litig.*,
   2023 WL 5663154 (N.D. Cal. Aug. 31, 2023) ............................................................. 9, 10, 11

*In re Enovix Corp. Sec. Litig.*,
   2024 WL 349269 (N.D. Cal. Jan. 30, 2024) ........................................................................... 14

*In re Facebook, Inc. Sec. Litig.*,
   405 F. Supp. 3d 809 (N.D. Cal. 2019), *rev'd and remanded on other grounds,*
   87 F.4th 934 (9th Cir. 2023) ............................................................................................ 12, 19

*In re Facebook, Inc. Sec. Litig.*,
   477 F.Supp. 3d 980 (N.D. Cal. 2020), *rev'd in part on other grounds*, 87 F.4th
   934 (9th Cir. 2023).................................................................................................................. 10

*In re Intel Corp. Sec. Litig.*,
   2019 WL 1427660 (N.D. Cal. Mar. 29, 2019)........................................................................ 12

*In re Intel Corp. Sec. Litig.*,
   2023 WL 2767779 (N.D. Cal. Mar. 31, 2023)........................................................................ 17

*In re LifeLock, Inc., Sec. Litig.*,
   690 Fed. App'x 947 (9th Cir. 2017) ......................................................................................... 9

*In re Nektar Therapeutics*,
   2020 WL 3962004 (N.D. Cal. July 13, 2020)................................................................... 18, 20

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014) ................................................................................................ 16

*In re Omnicom Grp., Inc. Sec. Litig.*,
   597 F.3d 501 (2d Cir. 2010)................................................................................................... 18

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

iii

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 5:25-cv-06252-NW

*In re Palo Alto Networks, Inc. Sec. Litig.*,
  2025 WL 2410348 (N.D. Cal. Aug. 19, 2025) ........................................................................ 20

*In re Paypal Holdings, Inc. S'holder Deriv. Litig.*,
  2018 WL 466527 (N.D. Cal. Jan. 18, 2018) ........................................................................... 11

*In Re Philip Morris Int'l Inc. Sec. Litig.*,
  89 F.4th 408 (2d Cir. 2023) ...................................................................................................... 9

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) ................................................................................................... 7

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012) ..................................................................................................... 1

*Joyce v. Amazon.com*,
  2023 WL 8370101 (W.D. Wash. Dec. 4, 2023) ...................................................................... 14

*Kim v. Advanced Micro Devices, Inc.*,
  2019 WL 2232545 (N.D. Cal. May 23, 2019) ........................................................................ 16

*Kusnier v. Affirm Holdings, Inc.*,
  2025 WL 2373353 (N.D. Cal. Aug. 14, 2025) ........................................................................ 14

*Lamontagne v. Tesla, Inc.*,
  2024 WL 4353010 (N.D. Cal. Sept. 30, 2024) ........................................................................ 20

*Leone v. ASP Isotopes Inc.*,
  811 F. Supp. 3d 563 (S.D.N.Y. 2025) ....................................................................................... 5

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002) ............................................................................................ 5, 15

*Mallen v. Alphatec Holdings, Inc.*,
  861 F. Supp. 2d 1111 (S.D. Cal. 2012) ................................................................................... 16

*Mineworkers' Pension Scheme v. First Solar Inc.*,
  881 F.3d 750 (9th Cir. 2018) ................................................................................................... 17

*Mulligan v. Impax Labs., Inc.*,
  36 F. Supp. 3d 942 (N.D. Cal. 2014) ................................................................................... 8, 12

*New York City Public Pension Funds v. Coupang, Inc.*,
  2025 WL 2613650 (S.D.N.Y. Sept. 10, 2025) ..................................................................... 9, 11

*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020) ............................................................................................ 10, 17

*Nuveen Mun. High Income Opp'y Fund v. City of Alameda*,
  730 F.3d 1111 (9th Cir. 2013). ................................................................................................ 18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 5:25-cv-06252-NW

*Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*,
    780 F. App'x 480 (9th Cir. 2019) ...................................................................................... 6, 10

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund.*,
    575 U.S. 175 (2015).................................................................................... 2, 9, 11, 12

*Patterson v. Jump Trading LLC*,
    710 F. Supp. 3d 692 (N.D. Cal. 2024), *aff'd*, 2025 WL 215519 (9th Cir. Jan.
    16, 2025) ...................................................................................................................... 20

*Pension Plan v. Comerica Inc.*,
    2026 WL 323711 (9th Cir. Feb. 6, 2026) ......................................................... 3, 19

*Plumbers & Steamfitters Loc. 60 Pension Tr. v. Meta Platforms, Inc.*,
    2024 WL 4251896 (N.D. Cal. Sept. 17, 2024) ................................................. 18, 19

*Plumbers & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
    11 F.4th 90 (2d Cir. 2021) .......................................................................... 2, 10

*Prodanova v. H.C. Wainwright & Co., LLC*,
    993 F.3d 1097 (9th Cir. 2021) ...................................................................... 13, 14

*Reckstin Family Trust v. C3.ai, Inc.*,
    718 F. Supp. 3d 949 (N.D. Cal. 2024) .......................................................... 2, 13, 14

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) ........................................................................ 2, 10

*Schnayder v. Allbirds, Inc.*,
    2026 WL 533600 (N.D. Cal. Feb. 26, 2026) ......................................................... 13

*Sneed v. Talphera, Inc.*,
    147 F.4th 1123 (9th Cir. 2025) ................................................................. 4, 7, 17

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
    552 U.S. 148 (2008)................................................................................................... 20

*Stoyas v. Toshiba Corp.*,
    896 F.3d 933 (9th Cir. 2018) ................................................................................ 8

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*,
    83 F.4th 514 (6th Cir. 2023) ....................................................................................... 20

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019) ....................................................................... 11

*Weston Family P'ship LLLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022) ................................................................................ 1, 7

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021) ........................................................................................ 10, 15

*Zaghian v. Farrell*,
   675 F. App'x 718 (9th Cir. 2017) ........................................................................................ 6

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ........................................................................................ 13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 5:25-cv-06252-NW

# GLOSSARY OF DEFINED TERMS

| Term | Definition |
|---|---|
| ¶_ | Citation to the paragraph numbers in Plaintiff's Complaint |
| Complaint | Complaint for Violations of the Federal Securities Laws, filed January 28, 2026 (Dkt. 65) |
| AI | Artificial Intelligence |
| App Store | Apple's platform that connects users to developers, allowing developers to offer their apps to more than a billion iPhone devices worldwide |
| Apple or the Company | Defendant Apple Inc. |
| CFO | Chief Financial Officer |
| Challenged Statement(s) | Statements Plaintiff alleges to be false or misleading in ¶¶ 452, 455-61, 463-64, 466-70, 473-81, 489-95, 504, 507, 510, 513, 515-16, 518, 520-21, 527, 529-30, 536-37, 540-41, 543-44, 546, 548-51, 553-55, 557 of its Complaint |
| Class Period | May 3, 2024 – May 1, 2025, inclusive (putative class period as alleged; no class certified) |
| Cook | Timothy D. Cook, Apple's CEO during the Class Period |
| Defendants | Apple and the Individual Defendants |
| *Epic* | *Epic Games, Inc. v. Apple Inc.*, 4:20-cv-5640 (N.D. Cal.) |
| Epic | Epic Games, Inc. |
| Ex(s). or Exhibit(s) | Exhibits attached to the Declaration of Whitney B. Weber in Support of Defendants' Motion to Dismiss Plaintiff's Complaint filed concurrently herewith, which are public filings and statements that are incorporated into the Complaint and/or subject to judicial notice |
| FE-1 | Confidential former Apple employee, as alleged by Plaintiff in the Complaint, ¶¶ 410-17, 634-36 |
| Federighi | Craig Federighi, Apple's Senior Vice President of Software Engineering during the Class Period |
| Fischer | Matthew Fischer, Apple's Vice President, Head of Worldwide App Store until October 2024 |
| FY | Fiscal Year |
| GPU | Graphics Processing Unit |
| Individual Defendants | Timothy D. Cook, Luca Maestri, Kevan Parekh, Craig Federighi, and Kelsey Peterson |
| Injunction | Injunction issued against Apple in *Epic* (Dkt. 813) |
| Maestri | Luca Maestri, Apple's CFO from prior to the start of the Class Period until January 2025, when he became SVP of Corporate Services |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 5:25-cv-06252-NW

| Term | Definition |
|---|---|
| Motion or Mot. | Defendants' Motion to Dismiss Complaint for Violations of the Federal Securities Laws; Memorandum of Points and Authorities (Dkt. 82) |
| Notice of Compliance or Notice | Notice of Compliance with the Injunction, filed by Apple in *Epic* (Dkt. 871) |
| Oliver | Carson Oliver, Apple's Senior Director of Business Management, App Store during the Class Period |
| Opposition or Opp. | Lead Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss the Complaint (Dkt. 88) |
| Parekh | Kevan Parekh, Apple's CFO since January 2025 |
| Peterson | Kelsey Peterson, Apple's Senior Director of AI and Machine Learning during the Class Period |
| Plaintiff | National Pension Service, on behalf of the National Pension Fund |
| PSLRA | The Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77k, *et seq.* |
| Roman | Alex Roman, Apple's Vice President of Finance during the Class Period |
| Schiller | Philip Schiller, an Apple Fellow responsible for leading the App Store and Apple Events |
| SEC | Securities and Exchange Commission |
| Siri Features | Two features that were part of Apple Intelligence updates to Siri: (i) Siri Personal Context Awareness and (ii) Siri In-App Actions |
| SVP | Senior Vice President |
| TV | Television |
| WWDC | Worldwide Developers Conference |

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW

viii

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 5:25-cv-06252-NW

## I.    INTRODUCTION

Plaintiff's Opposition confirms that the Complaint does not have any of the hallmarks of an actionable securities fraud claim. For instance, there are no former employees with inside information suggesting that any Defendant did not believe the Challenged Statements were true when they made them. Indeed, Plaintiff concedes that its sole confidential witness never spoke with any Defendant about Siri or the Injunction, never worked on the Siri Features, and only began working with Apple Intelligence months after the Challenged Statements. There is no particularized motive to lie: Plaintiff now admits that it "does not rely on suspicious stock sales" (Opp. at 17), and the only remaining theory—that executives wanted to earn performance-based compensation—is the kind of "routine corporate objective[]" that the Ninth Circuit has said is insufficient to plead scienter as a matter of law. *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012). And there are no meaningful stock price declines: the single-digit percentage drops at issue are well within Apple's ordinary trading volatility; Apple's stock price actually rose after some of the alleged "corrective disclosures"; and in every other instance the price quickly recovered. The Complaint does not meet the demanding legal standards that Congress and the Ninth Circuit have adopted for securities fraud claims and should be dismissed for any (or all) of the independent reasons below.

**No Material Misstatement**. The Complaint focuses on two categories of alleged misstatements, and neither is actionable. As to the Siri Features, Defendants repeatedly told investors that new capabilities would roll out "over the course of the next year" and—contrary to Plaintiff's mischaracterizations—never represented that these features were "available now." The statements Defendants *actually* made are quintessential forward-looking statements that are exempt from liability under the PSLRA's safe harbor. Plaintiff's effort to recast them as current statements of fact rests on selectively quoting the statements while ignoring the surrounding forward-looking language and cautionary disclosures. Nor does Plaintiff allege that, at the time Apple announced the Siri Features, it knew it could not release them on the anticipated timeline—particularly given Plaintiff's acknowledgement that the Siri Features were working up "to 80% of the time." ¶ 524. Plaintiff asks the Court to break new ground by holding that a company may not announce future product plans until it is a near certainty that they will be released on a specific date. That is not the law. *Weston*

*Family P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 620 (9th Cir. 2022) (no obligation to offer "instantaneous update of every internal development, especially when it involves the oft-tortuous path of product development").

As to the Epic Injunction, Defendants' statements about Apple's compliance plan are "inherently subjective and uncertain assessments." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015). Apple takes very seriously that the court presiding over that case found that Apple violated the Injunction, but the fact that the Ninth Circuit reversed aspects of that decision (which remains on appeal) confirms that this is precisely the sort of subjective assessment on which reasonable minds could disagree. The securities laws do not require companies to confess unproven accusations, particularly those that are hotly disputed. *See, e.g.*, *Plumbers & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 98 (2d Cir. 2021). Plaintiff has not pled that anyone who made the Challenged Statements did not believe in Apple's compliance at the time of their statements; and the fact that the *Epic* court later concluded otherwise does not render those earlier opinions false.

**No Scienter**. Plaintiff effectively concedes that no Defendant had any motive to commit fraud. The Complaint makes zero allegations that Parekh, Federighi, or Peterson had any motive at all. And while the Complaint originally alleged that Cook's and Maestri's stock sales were suspicious, Plaintiff now abandons those allegations altogether. Opp. at 17. That leaves only the assertion that Cook and Maestri were motivated to maximize revenue to earn performance-based "incentive awards" (*id.*)—but even the cases Plaintiff cites explain that such "routine corporate objectives" do not support the requisite strong inference of scienter. *Reckstin Family Trust v. C3.ai, Inc.*, 718 F. Supp. 3d 949, 985 n.25 (N.D. Cal. 2024). Without a plausible motive, Plaintiff must show that each Defendant knew or deliberately disregarded contemporaneous facts contradicting their statements—and it cannot. Plaintiff's sole confidential witness offers nothing more than speculation, having never worked on Siri nor interacted with any Defendant. As for the Epic statements, the cited internal documents reflect robust discussion about how to interpret the Injunction, but nothing suggesting any Defendant knew the plan adopted did not comply. *Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001) ("Problems and difficulties are the daily work of

business people. That they exist does not make a lie out of any of the alleged false statements.").

**No Loss Causation**. Plaintiff's attempt to reverse engineer a supposed "fraud" to coincide with days when Apple's stock price happened to decline misses the mark. None of the alleged corrective disclosures revealed any prior statement to have been false when made. In fact, Apple's stock *rose* following several of the alleged "corrective disclosures." And Plaintiff does not—because it cannot—attempt to argue that the single-digit percentage stock price fluctuations it complains of were unusual for Apple or that the price did not experience a quick and sustained recovery in each instance. Apple's stock regularly fluctuated by similar amounts during the same period, and it rebounded to nearly the same price within days of each alleged disclosure. The Ninth Circuit has repeatedly held that these flaws undercut loss causation as a matter of law. *See, e.g.*, *Nova Scotia Health Emps.' Pension Plan v. Comerica Inc.*, 2026 WL 323711, at *2 (9th Cir. Feb. 6, 2026).

If this case is allowed to proceed, any public company that rolls out product features later than originally anticipated, or expresses its belief in litigation positions a court later rejects, would be exposed to wasteful litigation at the expense of current shareholders. That is exactly the harm the PSLRA was intended to curb. The Complaint should be dismissed.

## II.    ARGUMENT

### A.    Plaintiff Does Not Plead Any Actionable Misstatement Or Omission

#### 1.    The Siri Features Statements Were Not False Or Misleading

##### a.    The Siri Features Statements Are Protected Forward-Looking Statements That Are Not Actionable Under The PSLRA

All of the Siri Features Statements are covered by the PSLRA safe harbor.

**The Statements Are Forward-Looking**. To start, Plaintiff does not dispute that ten of the Siri Features statements are forward-looking. Opp. at 21; ¶¶ 527, 529-30, 546, 550-51, 553-55, 557. Plaintiff argues that the remaining twelve statements misrepresented that the Siri Features already "existed and functioned." Opp. at 18, 21; ¶¶ 515-16, 518, 520-21, 536-37, 541, 543-44, 548-49. But Defendants said no such thing. To the contrary, nearly all of the twelve statements expressly discussed Defendants' expectations about the *future*. *See, e.g.*, ¶ 515 (Apple Intelligence "*will* transform your apps and experiences"); ¶ 516 ("Siri *will* have the ability to take hundreds of new actions"); ¶ 518 ("Siri *is going to become* more powerful"); ¶ 520 ("Siri *will be* able to deliver");

¶ 536 ("Siri *will be able to* draw on a user's personal context"); ¶ 543 (Apple Intelligence "*coming this fall*"); *see also* Mot. at 10-11 (citing cases).[1] And while Plaintiff points to some "present tense" language, it strategically omits the surrounding forward-looking language and context.

Take, for instance, Apple's TV ad. Plaintiff excerpts a screenshot displaying the words "More personal Siri" (¶ 541), but literally (and misleadingly) crops out the disclaimer appearing directly below those words: "Some features and languages *will be coming over the next year*."[2] Plaintiff resorts to similar mischaracterizations elsewhere, pointing to statements about *Apple Intelligence* to argue that the statements falsely implied that the *Siri Features* already existed. Opp. at 6, 19-20. For example, Plaintiff says Apple's webpage in October 2024 falsely displayed the words "'Available now' over images of the Siri Features." *Id*. at 6, 19, 21. But the "Available now" banner appeared underneath the words "Apple Intelligence"—which *was* available, with dozens of features released, Mot. at 6—*not* next to the Siri Features. ¶ 548. In fact, the webpage (and a press release from that same day) said "Siri *will become* even more capable . . . *[i]n the months to come*." ¶ 551; Ex. 15 at 10; *Sneed v. Talphera, Inc*., 147 F.4th 1123, 1131 (9th Cir. 2025) (courts must consider the full document and "information outside the immediate document"). Plaintiff also says Federighi "reinforced" that the "Siri Features would be 'Coming this fall'" during an October 22, 2024 interview. Opp. at 20 (citing ¶ 546). But he did not say that. To the contrary, in response to a question asking "Where is this smarter Siri?" Federighi responded "[i]t's coming in waves," noting "Siri is *adopting that in stages* and will benefit in stages *over the coming year*." ¶ 546. "Considered in context," the Siri Features statements are forward-looking. *Sneed*, 147 F.4th at 1131; *Hampton v. Aqua Metals, Inc*., 2020 WL 6710096, at *10 (N.D. Cal. Nov. 16, 2020) (dismissing statements suggesting "future plans" for products).

To that end, Plaintiff's argument that Defendants misrepresented that the features already "existed and functioned" when they demo'ed the features at WWDC (Opp. at 18, 21), is entirely unsupported by any facts plead in the Complaint. As Plaintiff acknowledges, the entire purpose of WWDC was to "*preview*" "software features" under development. ¶ 347. That is why Defendants

---

[1] All emphasis is added, and internal citations and quotations omitted, unless otherwise specified.
[2] The full ad can be viewed at: https://www.youtube.com/watch?v=X3c916Mb02E. Plaintiff agrees the Court may consider materials containing the Challenged Statements. Dkt. 89 at 11.

said that the Siri Features would "be rolling out . . . over the course of the next year," not that they were yet ready to launch. Ex. 10 at 20, 25.

Defendants' statements stand in stark contrast to the ones found actionable in the cases Plaintiff cites. In *Leone v. ASP Isotopes Inc.*, the company told investors "[o]ur team *have [sic] used* lasers to enrich many different metals," including "Uranium." 811 F. Supp. 3d 563, 592 (S.D.N.Y. 2025) (Opp. at 20). Unsurprisingly, given the past-tense phrasing, the court held that statement did "not convey a forward-looking aspiration" but was about "present capabilities," finding the statement actionable because the company had not ever "successfully tested" its technology on uranium. *Id.* at 592, 628. And in *Borteanu v. Nikola Corporation*, the court found the company misrepresented the availability of a vehicle that was still "just a computer-generated concept"—but only because the CEO "claimed on multiple occasions" that the vehicle was "a fully functioning vehicle . . . *not just some mock up*." 2023 WL 1472852, at *17 (D. Ariz. Feb. 2, 2023) (Opp. at 18). Here, by contrast, Defendants said Apple was developing additional Siri Features that were expected to roll out "over the course of the next year." Ex. 10 at 20, 25. "No reasonable investor could have understood Defendants' statements to mean" anything other than what they said. *Curry v. Yelp Inc.*, 2015 WL 7454137, at *6 (N.D. Cal. Nov. 24, 2015).

**No Actual Knowledge of Falsity**. Defendants' forward-looking statements are not actionable because Plaintiff does not plead facts showing any Individual Defendant *actually knew* the Siri Features would not launch in the coming year—a "*stricter* standard" than the already-heightened bar for pleading scienter. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 n.18 (9th Cir. 2002). At most, Plaintiff points to: (1) FE-1's allegations, (2) purported admissions from Apple employees that Apple "showed people" the Siri Features "before" they were "done," and (3) that Apple "still has not released the Siri Features." Opp. at 18-20. These allegations are insufficient.

To start, none of the FE-1 allegations shows any Defendant's "actual knowledge" of falsity. Indeed, Plaintiff admits that FE-1 never interacted with any Defendant, never worked on Siri, and only began working in "Apple's AI division" *months after* WWDC. Opp. at 25-26. It is thus "difficult to surmise how [FE-1's] opinions" could possibly show what Defendants "knew or did not know." *In re Accuray, Inc. Sec. Litig.*, 757 F. Supp. 2d 936, 949 (N.D. Cal. 2010); *see also, e.g.*,

*Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 484 n.5 (9th Cir. 2019) (Opp. at 19) (CW must "be personally knowledgeable" about statements they made). Regardless, FE-1's account is entirely consistent with the reality that the Siri Features were in production, and supports Defendants' belief that they would launch as expected. FE-1 reported that Apple "made a huge effort to get Apple AI ready" after previewing it at WWDC, with employees "work[ing] late every weekday, weekends and holidays." ¶ 413; Opp. at 6, 18. As Plaintiff admits, Cook supported these efforts: he authorized his team to "purchase GPUs" to increase "AI development," "persuad[ed] engineers to stay at Apple," and "expanded [Apple's] budget for building its own AI tools." Opp. at 25; ¶ 325. And those efforts were paying off: by late 2024, the features worked "two-thirds" of the time, and by "early 2025," they worked "80% of the time." Opp. at 19, 25-26; ¶ 404. Contrary to Plaintiff's arguments, FE-1's allegations show a functional model of the Siri Features *did* exist.

For similar reasons, Plaintiff's assertions that Federighi, Walker, and "other [unnamed] executives" "admitted" that "the features didn't work" and that Apple "showed people" the features "before" they were "done" (Opp. at 18, 25-26) are *consistent* with Defendants' statements that the features would be released *later*. Again, Plaintiff's own allegations show that the Siri Features were in development and were on track to be released. Plaintiff's cited case only demonstrates its own shortcomings. In *Zaghian v. Farrell*, a "senior vice president" told defendants that a new device "would likely fail," yet defendants continued to provide forecasts based on that "*unachievable* financial outcome." 675 F. App'x 718, 720 (9th Cir. 2017) (Opp. at 22). The opposite is true here—the features both existed and, by early 2025, worked a significant majority of the time.

Finally, Plaintiff makes much of the fact that Apple *later* delayed releasing the Siri Features and stopped running a TV ad. Opp. at 18. But this argument is quintessential "fraud-by-hindsight," which is "precisely what the PSLRA safe harbor is designed to guard against." *Golub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1048 (N.D. Cal. 2019), *aff'd*, 994 F.3d 1102 (9th Cir. 2021).

**The Statements Were Accompanied By Meaningful Cautionary Language**. The Siri Features statements are also protected for the independent reason that they were accompanied by meaningful cautionary language. Plaintiff argues that Apple's cautionary language was not meaningful because the warned-of risks appeared in sections of Apple's filings purportedly unrelated

to Apple Intelligence. Opp. at 22. But the PSLRA does not prescribe where such cautionary language must appear within a company's public filings, and as Plaintiff's own authority explains, cautionary language is meaningful if it identifies "important factors that could cause actual results to differ." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1141 (9th Cir. 2017) (Opp. at 21). That is exactly what Apple did here. Mot. at 12-13 (detailing cautionary language).

Plaintiff next argues that some of Apple's risk warnings appeared in SEC filings that "postdate" some of the statements. Opp. at 22. But many of these warnings appear in Apple's FY 2023 Form 10-K, which *predates* all the Siri Features statements. Ex. 4 at 7-8; *see Sneed*, 147 F.4th at 1131 (a "reasonable investor cares about a statement's surrounding text" in addition to "other information outside the immediate document"). These detailed warnings "identif[ied] important factors that could cause actual results to differ materially." *Twitter*, 29 F.4th at 623. And while Apple is not required to specify each new software feature it is developing to adequately warn that the release of new products may be delayed (*see id.* at 620), Apple did exactly that. After Apple unveiled Apple Intelligence at WWDC, it revised its risk disclosures to add that the "introduction of new and complex technologies, *such as artificial intelligence features*," may lead to "[q]uality problems" that could "delay [] new product and service introductions." Ex. 17 at 9. These warnings accompanied or predated multiple of the Siri Features Statements. ¶¶ 553-55, 557; Exs. 16-17, 19.

b.    Defendants' Beliefs About The Siri Features' Future Capabilities Are Nonactionable Opinions

Plaintiff does not dispute that six of the eight statements identified by Defendants are opinions (¶¶ 529-30, 546, 554-55, 557), but argues that the remaining two (¶¶ 521, 553) are not because they did not include "qualifying language." Opp. at 23. But "not all statements of opinion include such qualifying language like 'I believe' or 'I think.'" *AMI – Gov't Emps. Provident Fund Mgmt. Co. Ltd. v. Alphabet Inc.*, 2024 WL 4353637, at *3 n.1 (N.D. Cal. Sept. 3, 2024). An opinion is anything that reflects an "inherently subjective" assessment, which each of the eight Siri Features statements do. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613 (9th Cir. 2017). Plaintiff also argues that the opinion statements are actionable under *Omnicare* because they contained an "embedded statement of fact" that the features were

"functioning" and "could be released with the iPhone 16," or "omitted that Apple barely had a working prototype." Opp. at 23. But these are not "embedded" facts at all—they are a repackaging of Plaintiff's theory that Defendants supposedly gave the false impression that the Siri Features existed and functioned, which is unsupported for the same reasons above. *Supra* II.A.1.a.

c.     <u>Defendants' Description Of "A More Natural, Personal Siri" Is Nonactionable Corporate Optimism</u>

Plaintiff urges the Court not to dismiss the twelve statements Defendants identified as nonactionable corporate optimism (¶¶ 515, 518, 520-21, 527, 530, 537, 550, 553-55, 557) for two reasons, each of which is unavailing. *First*, it says whether a statement is one of corporate optimism is a "fact-intensive" inquiry that should not be decided now. Opp. at 23 (citing *Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942 (N.D. Cal. 2014)). But *Mulligan* did exactly that, *dismissing* statements that defendants were "confident" the company would "resolve" issues with the FDA as nonactionable. 36 F. Supp. 3d at 967 n.2; *see also* Mot. at 14-15 (citing cases). *Second*, Plaintiff says the statements allegedly misrepresented that the "features existed and were functional." Opp. at 23. But again, Plaintiff fails to explain *how* any Siri Features statement—*e.g.*, that Siri would be "more natural" (¶ 520) or "incredibly useful" (¶ 553)—constitutes anything more than "vague statements of optimism," which are inactionable. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010).

d.     <u>Apple's Consumer-Marketing Statements Were Not Made In Connection With The Purchase Or Sale Of A Security</u>

Finally, Plaintiff argues that Siri Features statements Apple made on its website, in a TV ad, in a YouTube interview, and at a developer conference (¶¶ 515-16, 518, 521, 540-41, 543-44, 548-50) were "in connection with" the purchase or sale of a security because analysts were "focused" on "statements regarding AI." Opp. at 20 (citing ¶ 346). But the analyst reports Plaintiff cites reported on Apple Intelligence generally, not the consumer-facing Siri Features statements. ¶ 346. Regardless, those statements were directed to *consumers*, not *investors* considering the purchase of Apple stock. *See Stoyas v. Toshiba Corp.*, 896 F.3d 933, 951 (9th Cir. 2018) (alleged fraud "must 'touch' the sale—*i.e.*, it must be done *to induce* the purchase at issue"). Consumer-directed statements "might have some probative value in an action based on consumer protection laws, but they have none in a

case alleging investor fraud." *In re LifeLock, Inc., Sec. Litig.*, 690 Fed. App'x 947, 954 (9th Cir. 2017) (affirming dismissal of securities claims based on consumer-directed statements).

### 2.   The *Epic* Statements Were Not False Or Misleading

#### a.   The *Epic* Injunction Statements Are Nonactionable Opinions

All of the *Epic* statements are nonactionable opinions. ¶¶ 452, 455-61, 463-64, 466-70, 473-81, 489-95, 504, 507, 510, 513. Plaintiff argues otherwise, claiming that the statements were "unqualified factual statements" that did not include "an expression of belief, view, or sentiment." Opp. at 10-11. But again, "not all statements of opinion include qualifying language like 'I believe' or 'I think.'" *Alphabet*, 2024 WL 4353637, at *3 n.1. Here, Defendants' statements about Apple's litigation position and its compliance plan are "inherently subjective . . . assessment[s]" that necessarily constitute opinions. *See In re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 418 (2d Cir. 2023) (quoting *Omnicare*, 575 U.S. at 186) (affirming dismissal of claims based on compliance statements). This is made clear by the fact that "different people ha[d] different interpretations" about Apple's right to charge a commission, for example. *In re Eargo, Inc. Sec. Litig.*, 2023 WL 5663154, at *2 (N.D. Cal. Aug. 31, 2023) (dismissing claims based on compliance statements). Though the *Epic* court held that Apple could not charge *any* commission for link-out purchases, the Ninth Circuit reversed, finding that Apple was entitled to do so. ¶ 312. That disagreement is unsurprising, given the Injunction was silent as to commissions. *See Epic Games, Inc. v. Apple Inc.*, 161 F.4th 1162, 1187 n.9 (9th Cir. 2025) (holding that "the text of the Injunction does not address commissions at all"). Because the *Epic* statements reflected Apple's litigation position and "view of its compliance with" the Injunction, they are opinions. *Omnicare*, 575 U.S. at 179. On this point, *New York City Public Pension Funds v. Coupang, Inc.*, 2025 WL 2613650 (S.D.N.Y. Sept. 10, 2025), is instructive. There, the court found the company's statement that it "do[es] not violate the Fair Trade Act and Copyright Act," without any qualifying language, to be a nonactionable opinion even though the Korean government found the company noncompliant two months later. *Id.* at *17-18. Notably, the court explained the "legal compliance" statement is a "variation of the statement *Omnicare* recognized as an 'unadorned statement of opinion about legal compliance.'" *Id.* at *18. That same reasoning applies with equal force here. And the Opposition confirms that Plaintiff has

not satisfied any of *Omnicare*'s three prongs rendering those opinions actionable.

As to the first prong (subjective disbelief), Plaintiff argues that Defendants "did not believe" Apple had complied with the Injunction, pointing to an executive's "warning" that "a commission would run afoul of the [I]njunction." Opp. at 9, 12. But the contrary view of an executive who did not make any Challenged Statement does not show "subjective falsity." *Align Tech.*, 856 F.3d at 615; *Eargo*, 2023 WL 5663154, at *2 (no falsity for "different [internal] interpretations" of policy coverage). Indeed, Plaintiff does not allege that Cook or Maestri "accepted" the executive's view. *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1194 (9th Cir. 2021). To the contrary, it alleges Cook and Maestri—with input from multiple cross-functional teams—disagreed with the executive. *E.g.*, ¶ 182. The Ninth Circuit, too, disagreed in part with the district court, noting that Apple *was* entitled to charge a "reasonable commission." *Epic Games*, 161 F.4th at 1186. The Ninth Circuit's partial reversal demonstrates reasonable minds could differ on whether Apple could charge a commission, especially as the Injunction did not prohibit imposing one. *Id.* at 1187 n.9. Likewise, concerns about a potential "compliance *risk*" (Opp. at 9) cannot "demonstrate that Defendants knew or reasonably should have known" Apple's compliance plan actually "violated the [] Order." *LifeLock*, 690 F. App'x at 951. These allegations simply show that Apple's executives engaged in robust discussions and internal debate regarding *potential* "[p]roblems and difficulties" associated with crafting a complex and inherently subjective compliance plan. *Ronconi*, 253 F.3d at 434. But assessing risk is the "daily work of business people," not fraud. *Id.* Plaintiff also argues that the Ninth Circuit's affirmance of the *Epic* court's bad-faith finding suggests Defendants "did not believe" their statements that Apple complied with the Injunction. Opp. at 12. But it defies common sense that Defendants would publicly file a compliance plan with the court that issued the Injunction if in reality they believed the court would disagree. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020) (that "defendants would promise" FDA would approve drug when they "knew the FDA would eventually" not do so unsupported). And in any event, Apple had "no obligation to self-report" "unadjudicated"—and hotly contested—allegations of non-compliance. *Danske*, 11 F.4th at 98.[3]

---

[3] Numerous courts within the Ninth Circuit have endorsed this established principle. *See, e.g.*, *Baker v. Twitter, Inc.*, 2023 WL 6932568, at *8 (C.D. Cal. Aug. 25, 2023); *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1023-24 (N.D. Cal. 2020), *rev'd in part on other grounds*, 87 F.4th 934

As to the second prong (embedded statement of untrue fact), none of Defendants' opinions contained any "untrue" "embedded fact." Opp. at 11. *Omnicare* illustrated when a statement contains an embedded fact, describing a scenario where a CEO stated, "I believe our TVs have the highest resolution available because we use a patented technology to which our competitors do not have access." 575 U.S. at 185. The Court explained that if the company did not have the patented technology (the embedded fact), that statement could be misleading. *Id.* Plaintiff here challenges four statements made in court filings and during the *Epic* hearings (¶¶ 460, 468, 481, 491) regarding the Link Entitlement design, claiming they contained embedded facts regarding the rationale behind Apple's selected commission percentage. Opp. at 11. Those are not embedded facts, however, but descriptions as to why Apple crafted certain compliance measures. Hindsight disagreement with Apple's explanations is not enough: "[t]he securities laws do not prohibit a company from publicly taking a litigation position that a tribunal may later reject." *Coupang*, 2025 WL 2613650, at *18.

As to the third prong (misleading omissions), Plaintiff says Apple omitted that it "chose to maintain its anticompetitive revenue stream over compliance." Opp. at 11. This is just another way of arguing that Apple was wrong to opine that it complied with the Injunction, which fails for the reasons described above. In any event, Apple's publicly filed Notice of Compliance disclosed that it considered revenue impacts from the Injunction when developing its plan. Ex. 5 at 14. Specifically, the Notice said Apple "balance[d] [its] entitlement to a commission" against the practical realities of linked-out transactions. *Id.* Apple's disclosures simply reflect a company implementing a court order through one of several available compliance mechanisms. *Eargo*, 2023 WL 5663154, at *2.

b.    Apple's Compliance Plan Statements Were True

Plaintiff does not dispute that Apple had "implemented a plan to comply" with the Injunction. Opp. at 12; ¶¶ 452, 504, 507, 510. Plaintiff pivots to argue that the statements were somehow misleading "half-truths," claiming that "[w]hile the plan *existed*," it was allegedly designed to "put profits over compliance." Opp. at 12. In other words, Plaintiff argues that Apple's compliance plan did not comply with the Injunction. But this just emphasizes that the statements were opinions, as

(9th Cir. 2023); *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 806 (N.D. Cal. 2019); *In re Paypal Holdings, Inc. S'holder Deriv. Litig.*, 2018 WL 466527, at *3 (N.D. Cal. Jan. 18, 2018).

they are not "a determinate, verifiable statement." *Omnicare*, 575 U.S. at 184; *supra* II.A.2.a. Indeed, the "compliance" label is a characterization of Apple's efforts to respond to the Injunction, and different parties could debate about whether it complied (and have). Nor did Apple conceal any underlying facts—it publicly disclosed exactly what its compliance plan entailed, giving investors all the information they needed to make their own assessment. Ex. 5. As Plaintiff's authority explains, that "Defendants' [compliance] efforts may have ultimately been [viewed as] unsuccessful or insufficient does not, on its own, establish the falsity of Defendants' statement at the time they were made." *Mulligan*, 36 F. Supp. 3d at 961 (Opp. at 12).[4] And while Plaintiff argues that Apple's compliance statements were "specific" to the Epic Injunction, Opp. at 13, courts routinely find similar statements to be nonactionable. *See, e.g.*, *Facebook*, 405 F. Supp. 3d at 825-26 ("We've worked hard to make sure that we comply with [the FTC Order]" nonactionable); Mot. at 18.

c.    *Epic* Court Filings and *Epic* Hearings Statements Are Not Actionable

The statements made in court filings and during the *Epic* evidentiary hearings are not actionable for two additional reasons. *First*, many of the statements (¶¶ 455-61, 463-64, 466-70, 473-81) occurred before the putative Class Period. Opp. at 13. Plaintiff does not dispute this, claiming instead that the statements are somehow "relevant." *Id.* But Plaintiff points to no authority holding that statements made *before the Class Period* are actionable. They are not, and the statements in ¶¶ 455-61, 463-64, 466-70, 473-81 must be dismissed for that reason alone. *See* Mot. at 19 (collecting cases). *Second*, none of the statements in the *Epic* proceedings were made in connection with the purchase or sale of a security. *Id.* at 18-19. Plaintiff claims Apple referenced "filings" in its SEC filings. Opp. at 13. But Apple's SEC filings provided only a general update on the litigation status—nowhere did Apple direct investors to review testimony or court declarations. Statements made in court filings (¶¶ 455-61, 463-64, 466-70, 473-81) and during hearings (¶¶ 489-95) are "a far cry from the typical statements upon which an investor would presumably rely." *See In re Intel Corp. Sec. Litig.*, 2019 WL 1427660, at *11 n.14 (N.D. Cal. Mar. 29, 2019).

---

[4] Plaintiff's "truth-on-the-market" argument is wrong. That doctrine applies when defendants assert that the truth became known through sources other than the defendants. *Chang v. Accelerate Diagnostics, Inc.*, 2016 WL 3640023, at *5 (D. Ariz. Jan. 28, 2016). Here, Defendants provided the information that Plaintiff asks the Court to ignore in filings Plaintiff challenges. *See id.*; Exs. 4, 17.

**B.**     **Plaintiff Does Not Adequately Plead A Strong Inference Of Scienter**

**1.**     **Defendants Were Not "Financially Motivated" To Commit Fraud**

Plaintiff effectively concedes that no Defendant had any motive to lie. Indeed, Plaintiff points to zero allegations that Parekh, Federighi, or Peterson had any motive at all. And while the Complaint alleged that Cook's and Maestri's stock sales evidenced scienter (¶¶ 672-74), Plaintiff now abandons those allegations altogether. Opp. at 17. Plaintiff is thus left with allegations that Cook and Maestri were motivated to maximize Apple's revenue to receive performance-based "incentive awards" in 2024. *Id*. But as the authorities even Plaintiff cites explain, "routine corporate objectives such as the desire" to "maximize [] apparent profitability" do not support the requisite strong inference of scienter. *See Reckstin*, 718 F. Supp. 3d at 985 n.25 (Opp. at 28); *Brendon v. Allegient Travel Co.*, 412 F. Supp. 3d 1244, 1262 (D. Nev. Sept. 9, 2019) (Opp. at 30) ("cash bonuses" insufficient to support scienter). Otherwise, "virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1005 (9th Cir. 2009); *see also Schnayder v. Allbirds, Inc.*, 2026 WL 533600, at *6 (N.D. Cal. Feb. 26, 2026) (connection between company's performance and executive's compensation is "too thin a reed" to support scienter).

**2.**     **Defendants Did Not Know Of Or Disregard Contemporaneous Facts**

Recognizing its inability to plead motive, Plaintiff attempts to downplay its importance, claiming motive is "not required." Opp. at 17. But without a "plausible motive," it is "*much less likely* that [Plaintiff] can show a strong inference of scienter." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021). Plaintiff comes nowhere close.

**Knowledge and Access Allegations**. Starting with the **Siri Features statements**, Plaintiff claims that Cook, Federighi, and Peterson (not Maestri or Parekh) "knew" that the Siri Features would not launch in the coming year. But Plaintiff points to nothing more than generic allegations that they had "access to facts that rendered their Siri statements false and misleading." Opp. at 25. Plaintiff does not say what these "facts" are, when they were learned and by whom, or how they gave *any* Defendant knowledge *each* of their statements were false when made. In fact, Plaintiff's own authority rejected similar "access" allegations as "far too vague to give rise to a 'strong

inference' of scienter." *Reckstin*, 718 F. Supp. 3d at 987 (Opp. at 28); *see also Prodanova*, 993 F.3d at 1109 (requiring "detailed allegations" showing "actual exposure" to contradictory information).

Plaintiff's other arguments fare no better. Plaintiff first claims Cook's "involvement in Apple's AI development" somehow suggests he knew the Siri Features would not launch on the expected timeline. Opp. at 25. But "convinc[ing]" "three engineers to stay at Apple," authorizing the purchase of GPUs "for AI development use," and spending "millions of dollars a day . . . with the goal of developing iPhone features" (¶¶ 325, 337; Opp. at 25), is *consistent* with his belief that the features being developed would work. To the extent Plaintiff tries to infer Cook's scienter through claims he knew the Siri Features "failed internal testing" in "December 2024 or January 2025" (Opp. at 6, 25), that also fails. Plaintiff's claim is (1) unsupported because the sole source of this allegation—FE-1—does not purport to know whether Cook tested the Siri Features, speculating only that it was "likely" he did, *id.*; and (2) contradicted by Plaintiff's admission that the Siri Features "functioned correctly up to 80% of the time in internal testing," *id*. at 19. These allegations, too, *support*, not contradict, Cook's statement after internal testing that the Siri Features "will be coming over the next several months." ¶ 557. Plaintiff's next theory—that because Defendants "ma[de] statements about the Siri Features," they must have known they were false (Opp. at 25)—also fails. "[I]f the mere decision to speak" were indicative of scienter, "there would be no distinction between the element of scienter and the requirement to plead a false statement." *Joyce v. Amazon.com*, 2023 WL 8370101, at *13 (W.D. Wash. Dec. 4, 2023). Plaintiff "fails to connect the dots to show that [Defendants] said one thing while knowing (or being deliberately reckless about not knowing) that the reality at that time differed in a material way," and thus cannot show scienter. *In re Enovix Corp. Sec. Litig.*, 2024 WL 349269, at *15 (N.D. Cal. Jan. 30, 2024).

As for the **Epic Injunction statements**, Plaintiff says that Cook, Maestri, and Parekh (not Federighi or Peterson) acted with scienter. As to Parekh, Plaintiff claims only that he made his one *Epic* statement shortly before the February 2025 evidentiary hearings. Opp. at 16. But as Plaintiff concedes, "temporal proximity" between a "statement[] and a [corrective] disclosure" does not, without more, raise an inference of scienter, *id.*—and Plaintiff cites no allegations about Parekh's state of mind at all. *Kusnier v. Affirm Holdings, Inc.*, 2025 WL 2373353, at *8 (N.D. Cal. Aug. 14,

2025).[5] As for Cook and Maestri, the Opposition repackages impermissible hindsight allegations, attempting to convert the *Epic* court's *later* decision into contemporaneous knowledge of falsity.

Take, for instance, Plaintiff's claim that "Cook approved the 27% commission, at Maestri's urging," despite a non-attorney executive "warning that a commission would run afoul of the [I]njunction" and presented a "compliance risk." Opp. at 9, 15. Again, there are no facts showing Cook or Maestri "ever accepted" that view. *Wochos*, 985 F.3d at 1194. Indeed, the Ninth Circuit later reversed the *Epic* court's decision to enjoin Apple from charging any commission on link-out (external) sales. ¶ 312. Plaintiff also argues that Cook chose the "'scar[iest] of three warning screen options" for its "link placement and design." Opp. at 15. But as Plaintiff admits, Cook sought only to "highlight[] . . . for customers" that "Apple's privacy and security standards do not apply to purchases made on the web." ¶¶ 226-27. And while Plaintiff points to "[n]otes from a June 2023 meeting" (Opp. at 16), Plaintiff does not allege any Defendant attended that meeting, what information they learned, or how that information contradicted their statements. *Lipton*, 284 F.3d at 1036. At most, the notes show discussions about how "[t]his is all going to play out in public." ¶ 677. That is not surprising; Apple *publicly disclosed* its compliance plan—and in doing so, warned investors there could be "no assurance" that the "policies and procedures [it] designed to ensure compliance . . . will be effective in preventing a violation or a claim of a violation." Ex. 17 at 13-14. Plaintiff's "allegations are consistent with [Defendants'] express warnings to investors." *Habelt v. iRhythm Techs., Inc.*, 2022 WL 971580, at *20 (N.D. Cal. Mar. 31, 2022).

Plaintiff's cases are not to the contrary. In *In re Alphabet, Inc. Securities Litigation*, defendants concealed security vulnerabilities after receiving an internal memo from counsel warning of "the problem" and the "consequences of disclosure" on the company's operations. 1 F.4th 687, 706 (9th Cir. 2021) (Opp. at 8); *see also Borteanu*, 2023 WL 1472852, at *34 (counsel told defendant "his statements were causing issues because of their misleading nature") (Opp. at 15). Here, by contrast, Plaintiff admits Cook and Maestri were advised that "Legal [was] comfortable with" Apple's "fair and defensible" compliance plan, which it publicly disclosed. ¶¶ 176, 180.

---

[5] *In re Apple Inc. Securities Litigation* is not to the contrary; there, defendants allegedly made "positive representations" "mere days before taking inconsistent actions." 2020 WL 2857397, at *25 (N.D. Cal. June 2, 2020) (Opp. at 16).

**Core Operations**. Plaintiff's continued reliance on the so-called core operations theory is puzzling, since neither the Siri Features nor Apple's compliance plan is a core operation. Conceding as much, Plaintiff argues the statements relate to the iPhone and the App Store as a whole. Opp. at 16, 24. But Plaintiff does not explain how the "development status" of two of the many Apple Intelligence features (let alone of the countless features of the iPhone) or the commission Apple could charge on link-out sales is material to either the iPhone or the App Store, much less material to Apple's business as a whole. *Id*.; *Curry*, 2015 WL 1849037, at *12. Regardless, even if they were core products, that does not mean "every piece of information" related to their development was a core operation. *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *21 (N.D. Cal. Dec. 17, 2019). Plaintiff's authority again highlights what is missing here. In *Construction Laborers Pension Trust of Greater St. Louis v. Funko Inc.*, for example, the court found scienter where Funko's inventory issues were "*essential* to [its] ability to operate" as a business and, if not addressed, could "lead to a vicious cycle of further losses." 166 F.4th 805, 832 (9th Cir. 2026) (Opp. at 16, 24). That is not the case here. Mot. at 25 (U.S. App Store was 1.8% of total net sales).

**Executive Departures and Role Changes**. Plaintiff cannot show *Defendants*' scienter through claims *non-Defendant* employees departed "shortly after the corrective disclosures." Opp. at 16-17, 25. To the contrary, and as Plaintiff's own authorities hold, "without any other facts about the [departures]," they do "not support a strong inference of scienter." *Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1138 (S.D. Cal. 2012) (Opp. at 21) (no scienter where defendant departed two months after corrective disclosure). Nor is the fact that Maestri transitioned from CFO to SVP of Corporate Services indicative of scienter, given he "remained at [the company]" in an executive role. *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1062-63 (9th Cir. 2014); Mot. at 25.

**Holistic Analysis**. Far from pleading "smoking gun" allegations of fraud (Opp. at 14), Plaintiff's allegations "affirmatively plead a more compelling inference" that Defendants were keeping investors updated amidst changing conditions. *Kim v. Advanced Micro Devices, Inc.*, 2019 WL 2232545, at *9 (N.D. Cal. May 23, 2019). Indeed, Defendants believed in Apple's efforts to develop the Siri Features, which were improving, but when it became clear they did not meet Apple's high quality bar—which Plaintiff admits happened *after* the last Challenged Statement—Apple

promptly disclosed that fact. *See In re Intel Corp. Sec. Litig.*, 2023 WL 2767779, at *18 (N.D. Cal. Mar. 31, 2023) (no "obligat[ion] to disclose" allegedly "missed [internal] deadline"). As for the Epic statements, the cited materials show robust discussions and internal debates among cross-functional teams about the various options and risks developing a first-of-its-kind compliance plan—and that Defendants ultimately settled on a plan they believed complied with the Injunction, which they publicly filed for all the world to see. The internal documents show Defendants expected public scrutiny, and it is nonsensical to suggest that they would invite such scrutiny had they known and believed the plan to be noncompliant. *Sneed*, 147 F.4th at 1134-35; *Nguyen*, 962 F.3d at 415.[6]

### C.    Plaintiff Does Not Adequately Plead Loss Causation

Plaintiff has not met its burden to plead loss causation. Even the cases Plaintiff cites confirm that Plaintiff must plead both a significant stock price decline *and* particularized facts showing the alleged corrective disclosures "revealed to the market" that the "alleged misstatements were false." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 791 (9th Cir. 2020) (Opp. at 27); *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (Opp. at 27) (must "trac[e] the loss back to the very facts about which the defendant lied"). Plaintiff does not do either.

**Siri Features**. Plaintiff claims that the **March 7, 2025** announcement "revealed" that Apple "had not developed" the Siri Features. Opp. at 28. That fails for two reasons. *First*, it misstates what Apple said. On March 7, Apple explained "[i]t's going to take us longer than we thought to deliver" the features and that Apple "anticipate[d] rolling them out in the coming year." Ex. 21 at 2. But Plaintiff admits that the features existed and worked up to 80% of the time (*e.g.*, ¶ 404), so any argument that Apple said it "had not developed" the features is a fiction. *Second*, this disclosure does not correct any prior statement. Apple's prior statements were forward-looking forecasts about when Apple expected the features to be ready. That Apple updated the forecasted release date months later was not "corrective" of its earlier forecast, nor suggests that it was false when made. *Dolly v. GitLab Inc.*, 2025 WL 2372965, at *16 (N.D. Cal. Aug. 13, 2025) (no loss causation from "failure to meet a [] projection"). So Plaintiff pivots to a materialization-of-the-risk theory, claiming the March 7

---

[6] Plaintiff cannot support Apple's scienter through non-Defendants Fischer, Oliver, or Roman. Opp. at 16; Mot. at 26 & n.4; *supra* II.B.2.

news revealed "risks concealed by Defendants' fraud." Opp. at 28. For starters, this theory is not recognized in the Ninth Circuit. *E.g.*, *Nuveen Mun. High Income Opp'y Fund v. City of Alameda*, 730 F.3d 1111, 1120 (9th Cir. 2013). And regardless, Plaintiff cannot identify any "concealed" risk that materialized given Apple's warnings about potential delays in new software. Exs. 3, 17.

Next, Plaintiff claims that analyst reports and news articles from **March 12** and **April 3** were corrective because they "allowed investors to better understand the 'significance' of the [previously announced] delay." Opp. at 28-29. In other words, nothing new. As Plaintiff's authority makes clear, a report "based on publicly available information" cannot be a corrective disclosure unless Plaintiff "explain[s] why the information was not yet reflected in the company's stock price" or that "other market participants had not done the same analysis." *BofI*, 977 F.3d at 794 (Opp. at 27). Plaintiff pleads nothing of the sort. Both the Morgan Stanley and *Wall Street Journal* reports (¶¶ 719, 724) were based on the March 7 announcement, and the "mere repackaging of already-public information by an analyst" is not "a corrective disclosure." *In re Nektar Therapeutics*, 2020 WL 3962004, at *18 (N.D. Cal. July 13, 2020).[7] Likewise, Cook's **May 1** statement that Apple "need[ed] more time" to meet its "high-quality bar," ¶ 729, was a "confirmatory" disclosure tracking the March 7 announcement, not new information. *Plumbers & Steamfitters Loc. 60 Pension Tr. v. Meta Platforms, Inc.*, 2024 WL 4251896, at *11 (N.D. Cal. Sept. 17, 2024).

***Epic* Injunction**. Plaintiff admits the **February 24-26** news articles revealed only a "risk" that Apple might be found noncompliant but tries to claim these articles are still somehow corrective because an "outright admission of fraud" is not required. Opp. at 27. While an outright admission may not be required, the corrective disclosure must still reveal "new information" to the market, which these articles did not. *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 541 (9th Cir. 2024). Rather, they simply confirmed the common sense point that Apple had been telling investors for more than a year, *i.e.*, that Apple believed it was in compliance, but given the pending litigation, "there c[ould] be no assurance" that the "policies and procedures . . . w[ould] be effective in preventing a violation or a claim of violation." Ex. 4 at 13. Plaintiff's claims regarding the **April 30** order suffers from an

---

[7] Morgan Stanley "reduce[d] its price target for Apple" (Opp. at 28) because of the alleged *impact* of already public information on iPhone sales; its decision to do so does not reveal anything new and cannot be corrective. *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010).

even more basic flaw—Apple's stock price went *up* after this event. Ex. 22; ¶ 730. Where there is no loss following a corrective disclosure, there can be no loss causation. *Facebook*, 87 F.4th at 954. Indeed, the lack of negative stock price movements suggest this news merely "confirmed" (not corrected) Apple's year-long risk warnings. *Meta*, 2024 WL 4251896, at *11-12.

Finally, Plaintiff cannot show Cook's **May 1** statement (¶ 728) that "there's risk associated with [pending legal cases] and the outcome is unclear" was corrective because (a) that statement corrected nothing; it is a truism, and (b) Plaintiff admits that analysts reported months earlier on the risk that Apple faced if it was found to have violated the Injunction. ¶¶ 709, 712. Cook only confirmed Apple's prior statements about that potential risk. *Meta*, 2024 WL 4251896, at *11.

**No Material Stock Drop**. Plaintiff does not dispute that the stock drops for which it seeks to recover for were "modest"—so Plaintiff tries to sidestep the issue, claiming it need only plead a "decline in the security's price." Opp. at 29. That is not the law. As Plaintiff's own case shows, the Ninth Circuit "requires a showing that the share price fell *significantly*." *Facebook*, 87 F.4th at 953 (Opp. at 29). Here, Apple's stock dropped between 2.7% and 9.2% following some (but not all) of the alleged corrective disclosures—well below the range courts have found sufficient to support loss causation—and quickly rebounded. Mot. at 29.[8] While Plaintiff urges the Court to ignore these cases because they involved "other circumstances" that suggest the declines were "not due to the revelation of fraud" (Opp. at 29), those same "circumstances" are present here. For example, Plaintiff claims the modest 7.4% declines in *Comerica* were "well within Comerica's typical stock price movement." *Id*. (quoting *Comerica*, 2026 WL 323711, at *2). So too here; Apple's stock regularly fluctuated by the same amount Plaintiff seeks to recover for here. Ex. 22 (6% change between May 9-12, 2025; 5% change between August 5-6, 2025; 4% change between September 2-3, 2025). Plaintiff also claims that the modest 6.6% declines in *Cai* "began to reverse within three days." Opp. at 29 (citing *Cai v. Visa Inc.*, 2025 WL 4091993, at *5-6 (N.D. Cal. Dec. 10, 2025)). Again, that is what happened here: Apple's stock increased a few days after the last corrective disclosure in May 2025 and

---

[8] Plaintiff's sleight-of-hand argument that these declines were significant because they involve "billions" of dollars of market capitalization is wrong. Opp. at 30. For a company of Apple's size, even a tiny percentage change could involve billions of dollars and Plaintiff cites no authority indicating the absolute dollar amount—rather than the percentage change—is the relevant metric.

rebounded to nearly the same price less than two weeks later. Ex. 22; *see also Cai*, 2025 WL 4091993, at *5-6 (no loss causation where price rebounded a "few weeks later").

### D.    Plaintiff Does Not Adequately Plead Scheme Liability

The Opposition does not overcome any of the reasons Defendants previously explained Plaintiff's scheme liability claim must be dismissed. *First*, Plaintiff argues Defendants' "engaged in fraudulent conduct" by "disseminating false statements." Opp. at 13-14, 23. But Plaintiff cannot "remedy [its] failure to plead falsity or scienter by *repackaging* [its] claims as 'scheme liability' claims," *In re Palo Alto Networks, Inc. Sec. Litig.*, 2025 WL 2410348, at *2 (N.D. Cal. Aug. 19, 2025), as a scheme claim must include "different and separate [conduct] from a nondisclosure claim." *Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 525, at *6 (6th Cir. 2023); *see also Lamontagne v. Tesla, Inc.*, 2024 WL 4353010, at *17 (N.D. Cal. Sept. 30, 2024) (dismissing scheme claims where no "false or misleading statements"); *supra*, II.A.

*Second*, Plaintiff fails to plead "deceptive conduct or a connection between any purported deceptive conduct and the investing public." *See Nektar*, 2020 WL 3962004, at *14. Plaintiff says, for example, that Defendants "deceptively represent[ed] that the Siri Features existed," and "would be rolled out on the stated timeline" but that the features "were nowhere close to launch." Opp. at 23. But Plaintiff admits that the Siri Features *did* exist, and by early 2025, worked 80% of the time. *Id*. at 19; *see also Nektar*, 2020 WL 3962004, at *14 (allegations not inconsistent with normal practice). Plaintiff's allegations regarding the *Epic* compliance plan design likewise fail because Plaintiff has not shown that Defendants "engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." *Patterson v. Jump Trading LLC*, 710 F. Supp. 3d 692, 717 (N.D. Cal. 2024), *aff'd*, 2025 WL 215519 (9th Cir. Jan. 16, 2025); *see also Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 161 (2008). Just the opposite, Plaintiff acknowledges Defendants publicly filed their compliance plan. ¶ 574.

*Finally*, Plaintiff relies on the same scienter allegations for their Rule 10b-5(b) claim to support their scheme claim, which fail as described above. *ServiceMaster*, 83 F.4th at 533.

## III.    CONCLUSION

Defendants respectfully request that the Court grant Defendants' Motion to Dismiss.

Dated: April 8, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Melanie M. Blunschi*
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Whitney B. Weber (Bar No. 281160)
*whitney.weber@lw.com*
Jordan Mundell (Bar No. 324110)
*jordan.mundell@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Michele D. Johnson (Bar No. 198298)
*michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626
Telephone: +1.714.540.1235

Jason C. Hegt (*pro hac vice*)
*jason.hegt@lw.com*
1271 Avenue of the Americas
New York, New York 10020
Telephone: +1.212.906.1200

*Attorneys for Defendants Apple Inc., Timothy D. Cook, Luca Maestri, Kevan Parekh, Craig Federighi, and Kelsey Peterson*